# IN THE SUPREME COURT OF IOWA

No. 15–1813

Filed March 31, 2017

Amended June 6, 2017

**BRENDA PAPILLON,**

Appellee,

vs.

**BRYON JONES,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Arthur E. Gamble, Judge.

Plaintiff seeks further review of court of appeals decision vacating award of punitive damages for illegal eavesdropping. **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED WITH INSTRUCTIONS.**

Bryon L. Jones, Waukee, appellant, pro se.

Bradley P. Schroeder and Laura J. Lockwood of Hartung & Schroeder, Des Moines, for appellee.

**WATERMAN, Justice.**

When is ignorance of the law an excuse?  In this appeal, we review whether the district court properly awarded punitive damages under the Interception of Communications Act, Iowa Code chapter 808B (2013), without specifically finding the defendant knew his conduct violated that statute.  In *Iowa Beta Chapter of Phi Delta Theta Fraternity v. State*, we interpreted chapter 808B to require such actual knowledge to award punitive damages.  763 N.W.2d 250, 267 (Iowa 2009).  The defendant in today's case secretly recorded his ex-girlfriend's conversations with other persons outside his presence to use the recordings against her in their child-custody litigation.  He claims that when he made the recordings, he was unaware his conduct violated chapter 808B.  The ex-girlfriend sued him under that chapter, and yet he persisted in his efforts to use the illegal recordings.  The district court, over his objection, allowed her to use the recordings to prove he violated chapter 808B and awarded compensatory damages, punitive damages, and attorney fees.  The court found that "regardless of whether he was consciously aware that his conduct was illegal," the defendant acted "willfully, maliciously and in reckless violation of the law."

The defendant appealed, and we transferred the appeal to the court of appeals.  The court of appeals affirmed the district court's evidentiary rulings and the award of compensatory damages.  It directed the district court to recalculate the attorney fees award and award appellate fees.  But the court of appeals reversed the award of punitive damages because the district court "did not find [defendant] was aware of the requirements of chapter 808B."  We granted the plaintiff's application for further review on the issue of punitive damages.

For the reasons explained below, we apply *Iowa Beta Chapter* and reiterate that to recover punitive damages, the plaintiff must prove the defendant knew he was violating chapter 808B. However, the evidence supports a finding this defendant knew he was violating the statute when he continued to use his illegal recordings in the custody litigation after his ex-girlfriend's lawsuit put him on notice of the Act's prohibitions. Accordingly, on remand, the district court shall apply the correct standard to determine whether punitive damages are warranted under the existing trial record and, if so, the amount. We affirm the court of appeals decision on the remaining issues raised in the defendant's appeal.

## I. Background Facts and Proceedings.

The following facts were established in the evidentiary record made at the bench trial. Brenda Papillon and Bryon Jones had a tumultuous relationship. They lived together in Waukee, Iowa, with their twin infants. Papillon owned the home. Jones stayed home caring for the twins while Papillon worked outside the home as an actuary. During January 2014, the couple ended the relationship. They attended two counseling sessions with Lindsey Olsen, a therapy specialist, but those efforts failed to resolve their problems. Jones frequently traveled to see his thirteen-year-old child from a prior relationship who lived in Omaha. On Friday, January 24, Papillon returned home from work to an empty house. Jones, without telling Papillon, had taken their twins to Omaha for the weekend. Papillon was surprised and distressed, as she felt the infants were too young to travel. Jones also failed to mention he left behind a hidden, sound-activated recording device (an Olympus VN-7200) in the study of their home.

Papillon called a close friend, Kristie Sargent, to discuss her frustrations. Jones's device secretly recorded the conversation. Papillon revealed she had been to see a lawyer and was planning to seek custody of their children. She told Sargent her lawyer advised it was unlikely Jones would receive full custody. Papillon noted Jones had threatened to file a temporary custody order and told her, "[W]ell I'll call my lawyer and take those kids from you 'cause I'm their primary care provider."

The next day, Papillon called her mother, expressing some of the same sentiments. Jones's hidden device recorded the conversation. Papillon told her mom about her plan to file for custody. On Sunday, Papillon called another friend, Bonnie Marshall. She talked about Jones taking the children to Omaha. She also divulged, "I went to my attorney on Friday. And I'm gonna file tomorrow." She continued, "I told him I want to go for [c]ustody." She discussed perhaps filing a temporary order against Jones. Papillon and her mother and friends were unaware Jones was recording these conversations.

On Monday, Papillon filed a custody action in the Iowa District Court for Polk County. The couple initially continued to live in Papillon's house. Papillon let Jones stay because she wanted "to be nice" and thought it may "look bad" in the custody action if she kicked him out. The court held a temporary custody hearing in March and entered a temporary support order for Papillon to pay Jones.

The weekend before that temporary hearing, Sargent visited Papillon at her home. Jones was in Omaha, yet he later sent Sargent a message by social media disputing the veracity of what Papillon had told Sargent privately. Sargent alerted Papillon, warning that she believed Jones may have been recording them given his detailed account of their private conversation. Sargent later testified, "I mean, [Papillon] reacted

that [she thought] that was the case and was very upset, she was crying. She didn't understand. She kept saying why, you know, why would this happen? Why would somebody do this?"

Jones began playing back the recordings at night in their home at high volume, preventing Papillon from sleeping. Fearing he would continue to record her, in early April Papillon moved to a motel room with the children. She emailed Jones, stating,

> I can no longer live under the same roof as you due to your behavior since mediation. I won't stay somewhere where I am harassed. I have rented a temporary place in Ankeny until you move out. The babies will stay with me on my days and I'll bring them and pick them up from daycare according to the calendar I previously sent.

She said her lawyer advised her to move "to a safer environment." Jones responded by offering to move out of the home if Papillon would pay for his hotel. She declined.

Jones frequently sent Papillon emails and text messages threatening to publicly disclose the contents of the recordings. One such text stated, "[W]hether it be in court or online—the truth will be revealed to all." He called Papillon a liar and warned he would show people the recordings to expose her. Jones said he possessed a video of Papillon allegedly "driving drunk" with the children in the car, although no such video was ever produced. Jones later admitted the video never existed, and he had only been trying to upset Papillon by telling her about it.

The parties exchanged discovery in the custody action. Papillon served an interrogatory asking Jones to identify "[f]or each report of surveillance . . . [t]he name, address, and telephone of each person who requested or authorized it." Jones responded that *he* had "requested/authorized" the recordings "for the purpose of litigation."

Jones transcribed the recordings. He gave the transcripts and six hours of audio files to his attorney for use in the custody proceedings. He also gave the recordings to Dr. Sheila Pottebaum, the child custody evaluator. Her report stated she reviewed the "[a]udio recordings of Brenda from conversations Bryon said he taped without Brenda's knowledge, along with his typed transcription of parts of the recordings." Dr. Pottebaum recommended Papillon receive full physical custody of the children. Jones listed the recordings and corresponding transcripts as exhibits in the custody proceedings until the morning before the custody trial began in November, when he finally withdrew them. The district court awarded Papillon sole physical custody of the twins.

Meanwhile, in August—three months *before* the custody trial— Papillon filed a civil action in district court against Jones, alleging a violation of Iowa Code section 808B.2, which prohibits "willfully intercept[ing] . . . a[n] oral communication" without permission of one of the parties. Iowa Code § 808B.2(1)(*a*). Jones was served with the original notice and petition that month and filed an answer and motion to dismiss. He warned Papillon he would call thirteen to fifteen witnesses, prolonging the litigation into a five-day trial. Because Papillon wanted to avoid attorney fees, she dismissed that lawsuit without prejudice and filed this expedited civil action on January 15, 2015, several months after the custody ruling. *See* Iowa R. Civ. P. 1.281 (governing expedited civil actions). Papillon sued Jones for actual damages, punitive damages, and attorney fees. Jones's answer alleged the recordings were made "as a component to their on-going therapy sessions with Lindsey Olsen." He claimed during a therapy session he said he was "going to record their conversation to bring back to the sessions," and Papillon responded, "Go ahead, I don't care."

The district court conducted a bench trial. Papillon offered the recordings and transcripts into evidence. Jones objected based on section 808B.7, which prohibits admission of "the contents or any part of the contents of an intercepted . . . oral . . . communication . . . in evidence in a trial . . . if the disclosure of that information would be in violation of this chapter." Iowa Code § 808B.7. The district court ruled,

> THE COURT: Well, the Court has reviewed Iowa Code Section 808B.7. The Court believes that that statute is intended as a shield to protect a person whose conversations have been surreptitiously recorded against the introduction of those recordings in litigation, such as the child custody litigation at issue in this case.
>
> The Court does not believe that that code section is intended to prohibit a person whose recordings—excuse me—whose conversations have been surreptitiously recorded from introducing those recordings into evidence in a lawsuit for damages resulting from the recordings.

The district court determined admission of the recordings and transcripts into evidence was necessary for Papillon to "prove up her case" because the contents would be relevant to punitive damages. The court overruled Jones's objection.

Papillon testified about how Jones used the recordings in the custody proceeding to uncover her litigation strategy:

> Q. And how do you think it affected the proceedings, given that Bryon basically was sitting at the table, in essence, when you and your attorney were having conversations that you're then sharing with these other folks? A. Well, I think that's why at the temporary hearing he knew exactly what I was going to do. He knew what I would give and take on. And so in those negotiations, I agreed to let him stay. I agreed to pay him . . . . When I'm talking with my lawyer about what's the worst that can happen, what is the best that can happen, deciding how to proceed with that, he used that against me.

Papillon testified she never gave Jones permission to record her, stating, "Who would ever give someone permission to let them record them in

their own house, talking to their friends and family, after a very horrible breakup, right before a custody trial? Absolutely not. I would never agree to that." Similarly, Sargent and Marshall testified they were unaware they were being recorded and never gave Jones permission to record them. Dr. Pottebaum testified, "Bryon said he taped [the recordings] without Brenda's knowledge."

Jones testified he never told Papillon specifically that he was going to record conversations "that didn't involve [him]"; rather, "I just said I'm going to make a recording." Jones stated he did not know the recordings were illegal when he made them:

> Q. Did you know it was against the law to intercept another's communication when you aren't part of it? A. No.
>
> Q. Did you ask anyone prior to beginning the recordings whether it was against the law? A. No.

However, he acknowledged that several months before the custody trial, Papillon sued him for violating chapter 808B, thereby notifying him his recordings were potentially illegal. At his deposition that month, Jones asserted his Fifth Amendment right against self-incrimination:

> Q. Do you recall at that time pleading the Fifth Amendment with respect to any of the questions I asked you on that topic? A. Yes.
>
> . . . .
>
> Q. That deposition, again, was taken August 19 of 2014; is that correct? A. Yeah.
>
> Q. So you knew at least by that time, certainly, that what you had done was illegal or potentially illegal; correct? A. That was based on my counsel's advice.

Despite his knowledge, Jones still planned to use the recordings against Papillon in the custody proceeding:

> Q. Well, the morning of [the custody] trial you were still going to offer those as evidence against Brenda. A. Yeah.

Q. But you knew they were illegal; correct?
A. Correct.

The district court found Jones liable for illegally intercepting Papillon's oral communications on January 24, 25, and 26, and March 1 and 2 of 2014. The court made a specific finding discrediting Jones's explanation that he obtained permission to record her in their "heated exchange" during the counseling session with Olsen. The court, after hearing Jones's testimony, found his explanation "defies common sense and is not credible." This was underscored by the "nature of the conversations themselves," which included Papillon's "personal thoughts regarding Defendant, . . . the advice given to her by her attorney, as well as her litigation plans and strategies." The district court awarded actual damages of $2076 for Papillon's motel charges.

The court awarded $18,000 in punitive damages, finding Jones's "motivations seem simply to hurt and harass the Plaintiff." Jones had repeatedly referred to Papillon as a "child killer" and a "liar" due to painful events related to a drunk-driving incident causing the death of her sister twenty years ago. Jones had threatened to reveal the recordings, which he stated uncovered incriminating information about the incident. He claimed Papillon was an alcoholic and frequently "drove drunk," but could produce no evidence to substantiate those claims. Nonetheless, he still consistently threatened to reveal Papillon's private conversations in court or online, insisting they would support the truth of his claims. The district court found,

> Defendant claims he did not know it was illegal to surreptitiously record Plaintiff's private oral communications without her knowledge, permission, or consent. *Regardless of whether Defendant was consciously aware that his conduct was illegal,* he intentionally recorded Plaintiff's private conversations and disclosed them or endeavored to disclose them to third parties in order to use them against her in child custody litigation. Defendant clearly knew what he

> was doing when he did it and he did so willfully, maliciously, and in reckless violation of the law.

(Emphasis added.)  Finally, the district court awarded Papillon attorney fees of $16,008.  *See* Iowa Code § 808B.8(1)(*b*)(3) (allowing award of attorney fees for violations of chapter 808B).  Jones appealed, and we transferred the case to the court of appeals.

On appeal, Jones argued the audio recordings were inadmissible in the civil proceeding.  He also contended the district court's awards of actual damages, punitive damages, and attorney fees were not supported by the evidence.  The court of appeals determined the district court properly admitted the recordings into evidence because Papillon, a party to the conversations, consented to their admission.  The court of appeals affirmed the district court's award of actual damages and concluded Papillon was entitled to an award of attorney fees.  But it found she was not entitled to all of her fees incurred in the first civil action she voluntarily dismissed and held fees from the first action could be awarded only to the extent the work benefited the second action.  The court of appeals directed the district court to recalculate the fees accordingly and award appellate fees.  It reversed the award of punitive damages because proof of violating a "known duty" is required under *Iowa Beta Chapter* and "[t]he evidence does not show Bryon knew his use of the recordings violated the act."  We granted Papillon's application for further review.

**II.  Scope of Review.**

"On further review, we can review any or all of the issues raised on appeal or limit our review to just those issues brought to our attention by the application for further review."  *Woods v. Young*, 732 N.W.2d 39, 40 (Iowa 2007) (quoting *Anderson v. State*, 692 N.W.2d 360, 363 (Iowa

2005)). Papillon sought further review of the reversal of her punitive damages award, and we elect to confine our review to that issue. The court of appeals decision shall stand as the final decision on the remaining issues raised by Jones. *See State v. Pearson*, 804 N.W.2d 260, 265 (Iowa 2011) (electing to review only one issue and letting the court of appeals decision stand on the remaining two).

A civil action for damages under section 808B is tried at law, and "our review is for correction of errors at law." *Iowa Beta Chapter*, 763 N.W.2d at 257. On questions of statutory interpretation of chapter 808B, our review is for correction of errors at law. *State v. Spencer*, 737 N.W.2d 124, 128 (Iowa 2007). "We review an award of punitive damages for correction of errors at law." *Wolf v. Wolf*, 690 N.W.2d 887, 893 (Iowa 2005).

"The district court's findings of fact are binding on us if supported by substantial evidence." *Iowa Beta Chapter,* 763 N.W.2d at 257.

> When a party challenges a district court's ruling claiming substantial evidence does not support the decision, we must view the evidence in the light most favorable to support the judgment and liberally construe the court's finding to uphold, rather than defeat, the result reached.

*Id.*

### III. Analysis.

We must decide whether the district court properly awarded punitive damages. We begin with an overview of the governing statute. Iowa Code chapter 808B, enacted in 1989, is intended to protect reasonable expectations of privacy in oral communications. *See id.* at 261; *see also* 1989 Iowa Acts ch. 225, §§ 22–29 (codified at Iowa Code ch. 808B). To that end, section 808B.8 authorizes the victims of intercepted communications to bring "a civil cause of action against any

person who intercepts, discloses, or uses" an unlawfully intercepted oral communication "in violation of this chapter." Iowa Code § 808B.8. A violation of chapter 808B occurs when a person "[w]illfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept" an oral communication. *Id.* § 808B.2(1)(*a*). A violation also occurs when a person "[w]illfully uses, or endeavors to use, the contents of" an oral communication "knowing or having reason to know that the information was obtained" through illegal interception. *Id.* § 808B.2(1)(*d*). To "intercept" means to acquire the contents of an oral communication by use of "an electronic, mechanical, or other device." *Id.* § 808B.1(6). An oral communication is a communication "uttered by a person exhibiting an expectation that the communication is not subject to interception, under circumstances justifying that expectation." *Id.* § 808B.1(8). "When construing a statute, we are required to assess a statute in its entirety, not just isolated words or phrases." *Iowa Beta Chapter*, 763 N.W.2d at 260.

In *Iowa Beta Chapter*, we reviewed a judgment against the University of Iowa and Phillip Jones, its dean of students, in a civil action brought under chapter 808B by a fraternity. *Id.* at 254. The University had brought disciplinary proceedings against the fraternity alleging alcohol and hazing violations based on a student's complaint and secret audio recording taken in the fraternity's subbasement. *Id.* at 255–56. The student rented an upstairs room in the fraternity house but was not a member. *Id.* at 255. He planted a secret audio-recording device in the subbasement room where the fraternity held its private meetings. *Id.* The device digitally recorded audio of alleged hazing activities described as "a military-style lineup in which active members were addressed as 'hell masters' and pledges were being trained." *Id.* The University

submitted the audio recording as evidence at an administrative hearing, and the hearing officer relied on the audio recording in affirming the University's penalties against the fraternity, including its derecognition. *Id.* at 256. The fraternity's lawyer faxed a copy of section 808B.7 to the hearing officer and counsel for the University, who then dropped the hazing charges. *Id.* The fraternity filed a civil action alleging violations of chapter 808B. *Id.* at 256–57. Following a bench trial, the district court entered judgment for the fraternity and against the State, the University, and Dean Jones, awarding actual and punitive damages and attorney fees. *Id.* at 257. We affirmed the district court's findings that the defendants' use of the clandestinely recorded audio in the disciplinary proceedings violated chapter 808B. *Id.* at 265. However, we reversed the punitive damage judgment against Dean Jones because the "evidence [did] not establish Jones knew his use of the tape violated the act." *Id.* at 268.

Here, the district court found Jones violated the statute. Substantial evidence supports its findings. Jones left a secret device in Papillon's home to record her private conversations with her friends and mother. Papillon reasonably believed her conversations were private. *See id.* at 261 (determining private fraternity meeting is place where expectation of privacy was reasonable). Jones was not present for those conversations. *See Spencer*, 737 N.W.2d at 128 (noting *party* to a conversation may consent to recording without knowledge of other party and use recording). Jones used or attempted to use the audiotapes and transcripts of his secret recordings in the custody litigation by providing those materials to the custody evaluator, threatening Papillon with their use, and listing them as exhibits until the morning of the custody trial. His conduct violated chapter 808B and supports the award of actual

damages. *See Iowa Beta Chapter*, 763 N.W.2d at 264–65; *cf. Epstein v. Epstein*, 843 F.3d 1147, 1151–52 (7th Cir. 2016) (reviewing applicability of Federal Wiretap Act to interception of emails in marital dissolution action and reinstating claims against wife).

The award of punitive damages against Jones presents a closer question. Punitive damages exist to punish a defendant who has "intentionally violated another's rights." *Ackelson v. Manley Toy Direct, L.L.C.*, 832 N.W.2d 678, 686 (Iowa 2013). They also serve to "deter the defendant, and others, from repeating such conduct in the future." *Hamilton v. Mercantile Bank of Cedar Rapids*, 621 N.W.2d 401, 407 (Iowa 2001). Section 808B.8 provides:

> 1. A person whose wire, oral, or electronic communication is intercepted, disclosed, or used in violation of this chapter shall:
>
> . . . .
>
> *b.* Be entitled to recover from any such person all of the following:
>
> (1) Actual damages, but not less than liquidated damages computed at the rate of one hundred dollars a day for each day of violation, or one thousand dollars, whichever is higher.
>
> (2) *Punitive damages upon a finding of willful, malicious, or reckless violation of this chapter.*

Iowa Code § 808B.8(1)(*b*) (emphasis added). The court of appeals concluded to recover punitive damages under that section, the plaintiff must prove the defendant was "aware of the requirements of chapter 808B and willfully, maliciously, or recklessly violate[d] those statutory requirements." We agree.

In *Iowa Beta Chapter*, we construed chapter 808B and concluded that a "mere violation of the statute will not entitle an aggrieved person to receive punitive damages." 763 N.W.2d at 263. We noted the term

"willfully" is used in both the liability and punitive damages sections of chapter 808B. *Id.* at 263–64, 267. Section 808B.2 imposes liability for "willfully" intercepting or using the recording,[1] while section 808B.8 allows punitive damages for "willfully, maliciously, or reckless[ly]" violating the act. *Id.* at 263–64. We observed that "[i]f we define[d] 'willfully' in section 808B.2 as requiring a bad motive or knowing, unlawful component, every violation would entitle a person to punitive damages." *Id.* at 264. Additionally, it would render the words "malicious" and "reckless" in the punitive damages section surplusage. *Id.* We concluded "the legislature intended more than a purposeful violation of the statute before a court could award punitive damages." *Id.* at 267.

So ignorance of the law will avoid punitive damages, but not actual damages under chapter 808B. "Willfully" in section 808B.2 "only requires purposeful conduct without a bad motive or knowing, unlawful component," which is "consistent with our law that persons ordinarily should not escape the legal consequences of failing to observe statutory requirements by asserting ignorance of the law." *Id.* at 264; *see also Diehl v. Diehl*, 421 N.W.2d 884, 888 (Iowa 1988) (concluding jury instruction erroneously required "actual knowledge by [the] plaintiff of the statutory requirements" to supervise minor son while driving and noting ignorance of the law does not excuse statutory violation of motor vehicle code). But an award of punitive damages under section 808B.8 requires something more: a finding of "at least a voluntary, intentional

---

[1]*See* Iowa Code § 808B.2 (imposing liability when person "*a. Willfully* intercepts . . . a[n] oral communication[,] *b. Willfully* uses . . . [a] device to intercept any oral communication . . . [, or] *c. Willfully* discloses . . . to any other person the contents of a[n] . . . oral . . . communication" (emphasis added)).

violation of, and perhaps also a reckless disregard of, a *known legal duty.*" *Iowa Beta Chapter*, 763 N.W.2d at 263, 267 (emphasis added) (quoting *Citron v. Citron*, 722 F.2d 14, 16 (2d Cir. 1983)).

We relied in part on cases construing the Federal Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2522. *Id.* at 262–63. Although Congress amended the damages section of the Omnibus Crime Control and Safe Streets Act in 1986 by enacting the Electronic Communications Privacy Act, the Iowa statute was based on the language of the 1968 Act. *Id.* at 260–61. Thus, we found interpretations of the 1968 Act instructive. *Id.* at 261. Before the 1986 amendment, federal courts

> required the word "willfully" in a civil action under the Omnibus Crime Control and Safe Streets Act of 1968 "to denote at least a voluntary, intentional violation of, and perhaps also a reckless disregard of, a known legal duty," rather than an act which is intentional, or knowing, or voluntary, as distinguished from accidental.

*Id.* at 263 (quoting *Citron*, 722 F.2d at 16). We adopted this knowing violation requirement for punitive damages under chapter 808B. *Id.* at 267.

"[E]vidence that defendants believed they were acting lawfully is pertinent to a determination of whether they acted with malice or wantonness so as to render punitive damages appropriate." *Campiti v. Walonis*, 467 F. Supp. 464, 466 (D. Mass. 1979). Thus, courts have denied punitive damages under the Federal Act when the defendant was unaware his conduct was illegal. *Shaver v. Shaver*, 799 F. Supp. 576, 580 (E.D.N.C. 1992). For example, in *Shaver*, a wife secretly recorded her husband's conversations because she thought he was having an affair. *Id.* at 577. The court found a violation of the Federal Act, but declined to award punitive damages because the wife did not know her

recordings violated the law. *Id.* at 580–81. *But see Quigley v. Rosenthal*, 327 F.3d 1044, 1070 (10th Cir. 2003) (recognizing knowledge of illegality was "pertinent to a determination" of punitive damages, but allowing punitive damages against an attorney who could have discovered the illegality by investigating before using the intercepted private communications).

Papillon argues *Iowa Beta Chapter* was wrongly decided eight years ago because it relied on nonbinding federal cases interpreting a different statute. The Iowa legislature, however, has not amended section 808B.8 to abrogate *Iowa Beta Chapter*, and we decline to overrule our precedent given the tacit legislative acceptance of our interpretation. *See Ackelson*, 832 N.W.2d at 688 (declining to overrule precedent interpreting statute to disallow punitive damages, in light of "the venerable principles of stare decisis and legislative acquiescence"). We defer to the legislature whether to relax the proof required for punitive damages under chapter 808B.

Papillon argues her award of punitive damages should be upheld under Iowa Code chapter 668A, which governs recovery of common law punitive damages and requires proof by "a preponderance of clear, convincing, and satisfactory evidence, the conduct of the defendant from which the claim arose constituted willful and wanton disregard for the rights or safety of another." § 668A.1(1)(*a*). But cases seeking punitive damages for violations of chapter 808B are governed by that statute, not chapter 668A. "We read related statutes together and attempt to harmonize them." *In re A.M.*, 856 N.W.2d 365, 372 (Iowa 2014). If statutes cannot be harmonized, the specific provision will "prevail[] as an exception to [a] general provision." Iowa Code § 4.7. Section 668A.1 is a general provision applying to any "claim involving the request for

punitive or exemplary damages." *Id.* § 668A.1(1). By contrast, section 808B.8 applies only to civil claims under that statute alleging the unlawful interception of communications. *Id.* § 808B.8(1)(*b*)(2). Accordingly, to the extent section 808B.8 cannot be harmonized with section 668A.1, section 808B.8, as the more specific provision, controls. To recover punitive damages under section 808B.8, the plaintiff must prove the defendant knew he was violating the statute. *Iowa Beta Chapter*, 763 N.W.2d at 267.

The district court concluded Jones "recorded Brenda's private conversations and endeavored to disclose them to third parties in order to use them against her in child custody litigation" and did so "willfully, maliciously, and in reckless violation of the law." But the district court made no finding that Jones was consciously aware that his conduct was illegal. Thus, the court of appeals correctly concluded the district court did not use the correct legal standard in awarding punitive damages.

"If we find an incorrect legal standard was applied, we remand for new findings and application of the correct standard." *State v. Robinson*, 506 N.W.2d 769, 770–71 (Iowa 1993). "Although an omitted ruling on an issue of law may sometimes be cured by this court's ruling on that issue, . . . this is not possible with respect to an omitted finding of fact in a law-tried case." *Power Equip., Inc. v. Tschiggfrie*, 460 N.W.2d 861, 864 (Iowa 1990) (citation omitted). Unless we determine there is insufficient evidence to sustain an award of punitive damages as a matter of law, we must remand to the district court for appropriate findings of fact. *See Wolf*, 690 N.W.2d at 893 ("We review an award of punitive damages for correction of errors at law."); *see also McClure v. Walgreen Co.*, 613 N.W.2d 225, 230–31 (Iowa 2000) (determining district court properly submitted punitive damages to jury when substantial evidence supported

a finding of willful and wanton conduct); *cf. Caruso v. Apts. Downtown, Inc.*, 880 N.W.2d 465, 475 (Iowa 2016) (concluding "a remand is not necessary" when "we conclude as a matter of law that the evidence is insufficient to support a penalty").

We conclude there was sufficient evidence to support an award of punitive damages. Papillon's first lawsuit under chapter 808B was served on Jones in August 2014 and put him on notice that his subsequent efforts to use the illegal recordings violated that statute. He asserted the Fifth Amendment to refuse to answer questions about his recordings when deposed that month in the custody case. *See Craig Foster Ford, Inc. v. Iowa Dep't of Transp.*, 562 N.W.2d 618, 623–24 (Iowa 1997) ("[A] trial court may infer in a civil case from a party's refusal to answer based on a claim of privilege against self-incrimination that the answer would be adverse to the party." (quoting *Eldridge v. Herman*, 291 N.W.2d 319, 322 (Iowa 1980)). Yet he persisted in using his illegal recordings.[2] Specifically, Jones allowed Dr. Pottebaum to use the recordings in her child custody evaluation in September. He kept the illegal recordings on his exhibit list until the morning of the November custody trial. This evidence is sufficient to support a finding that Jones knew by August that he was using the secret recordings in violation of chapter 808B. The district court, however, failed to make that specific finding required to award punitive damages. We agree with the court of appeals that the lack of such a finding requires reversal of the award of

---

[2]In *Iowa Beta Chapter*, we reversed the $5000 punitive damage award against Dean Phillip Jones because the evidence failed to show he knew his use of the secretly recorded audio of hazing was illegal before the fraternity's lawyer faxed a copy of chapter 808B, which prompted Jones and the University to immediately cease using the audio recording and dismiss the hazing charges. 763 N.W.2d at 267–68.

punitive damages. But we disagree the door must remain closed to such an award here.

We remand the case to the district court for a determination of whether punitive damages are appropriate, applying the correct standard set forth in *Iowa Beta Chapter* to the existing trial record. *See, e.g., Nathan Lane Assocs., L.L.P. v. Merchs. Wholesale of Iowa, Inc.*, 698 N.W.2d 136, 140 (Iowa 2005) (remanding for entry of a new judgment based on existing record when court erred in calculating damages).

## IV. Disposition.

For those reasons, we affirm in part and vacate in part the decision of the court of appeals. We affirm the decision of the court of appeals and the district court judgment awarding Papillon actual damages. We affirm the decision of the court of appeals remanding the case to district court to recalculate attorney fees and award reasonable appellate attorney fees to Papillon, including for her application for further review. We vacate the decision of the court of appeals that precluded an award of punitive damages. We reverse the district court's judgment for punitive damages and remand the case for the district court to determine on the existing trial record whether Papillon is entitled to punitive damages under the standard reiterated in this opinion, and if so, the amount thereof. All costs of this appeal are assessed against Jones.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED WITH INSTRUCTIONS.**