**STATE of Iowa, Appellee,**

v.

**Anthony Dean RIVERA, Appellant.**

No. 99–0372.

Court of Appeals of Iowa.

March 29, 2000.

Linda Del Gallo, State Appellate Defender, and David Arthur Adams, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Mary Tabor, Assistant Attorney General, John P. Sarcone, County Attorney, and Jamie Bowers, Assistant County Attorney, for appellee.

Considered by SACKETT, C.J., and VOGEL and HECHT, JJ.

VOGEL, Judge.

On appeal from his conviction for manufacturing a controlled substance, Rivera contends the court erred in determining there was sufficient evidence to prove he possessed more than five grams of methamphetamine. Rivera concedes the methamphetamine seized from his home was part of the manufacturing process but was suspended in a liquid that was not usable or ingestible. Because we find the gram weight under the statute includes the weight of any mixture containing a detectable amount of methamphetamine, there was substantial evidence to support the conviction.

*Background facts.* Anthony Rivera was stopped for driving a vehicle without a front license plate. He consented to a search of his person which produced drug paraphernalia consistent with methamphetamine use, including a folding knife, stripped lithium batteries, coffee filters, cigarette lighters and a glass straw. Several similar items were observed in the vehicle. Rivera was arrested for driving without a valid driver's license. An inventory search of the car produced more drug related articles. Subsequently, a search warrant was obtained for Rivera's residence. The search revealed what police believed to be a methamphetamine laboratory. The methamphetamine lab team was called in to complete the search and seizure.

Rivera was tried to the court on two counts, consisting of conspiracy to manufacture and/or deliver a controlled substance, methamphetamine, in an amount over five grams and manufacturing a controlled substance, methamphetamine, in an amount over five grams in violation of Iowa Code section 124.401(1)(b)(7) (1997). He was convicted of the manufacturing charge, a class "B" felony, and was sentenced to incarceration for an indeterminate term of twenty-five years.

*Scope of review.* Interpretation of a statute is a legal question. Therefore, our review is at law. Iowa R.App.P. 4; *see State v. Blakley*, 534 N.W.2d 645, 647 (Iowa 1995). A verdict will be upheld where there is substantial evidence to support the charge. *State v. LeGear*, 346 N.W.2d 21, 23 (Iowa 1984). Substantial evidence means such evidence as could convince a rational trier of fact the defendant is guilty of the crime charged beyond a reasonable doubt. *Id.* The evidence is viewed in the light most favorable to the State, including legitimate inferences and presumptions which may fairly and reasonably be deduced from the record. *State v. Blair*, 347 N.W.2d 416, 418–19 (Iowa 1984).

■ *Substantial evidence of the weight of the methamphetamine.* The items seized from Rivera's home included a one-gallon glass jar approximately one quarter full of a clear liquid. After a sample was taken from the jar, the hazardous contents were disposed of by the methamphetamine lab team. The sample analysis revealed a mixture containing d-methamphetamine[1] and d-pseudoephedrine. The court determined that the liquid in the jar weighed over five grams. Rivera contends the record must contain substantial evidence that the methamphetamine, as a finished product, exceeds five grams.

While Rivera admits the liquid seized was part of the manufacturing process, he contends the statute does not allow for the weight of the liquid containing suspended methamphetamine to be considered in satisfying the minimum five gram weight because the methamphetamine itself is not in its final stage and ready for consumption. According to the State, the statute is not so narrow. It reads as follows:

> More than five grams but not more than five kilograms of methamphetamine, its salts, isomers, or salts of isomers, or analogs of methamphetamine, or *any compound, mixture, or preparation which contains any quantity or detectable amount of methamphetamine*, its salts, isomers, or salts of isomers, or analogs of methamphetamine.

Iowa Code section 124.401(1)(b)(7) (1997) (emphasis added). While this issue has been broached in other cases, it has yet to be decided in Iowa. *See State v. Maghee*, 573 N.W.2d 1, 13 (Iowa 1997); *see also State v. Casady*, 597 N.W.2d 801, 808 (Iowa 1999).

Rivera argues that the "quantity or detectable amount of methamphetamine" must be the finished product. He compares this provision to other code sections,[2] admitting the purpose of those sections is to avoid having to extract pure forms of narcotics from the filler products used to increase the quantities available for sale. *See Maghee*, 573 N.W.2d at 13. By contrast, the liquid seized from his home was still in the manufacturing stage, and he argues, a successful manufacturer would discard most of the liquid once the marketable product had crystallized and been extracted. So, to weigh the liquid still in the manufacturing stage greatly exaggerates the quantity of finished product, skewing the gram weight and associated penalties. A producer with a large quantity of liquid containing a small amount of methamphetamine could be punished more severely than a producer, with a larger amount of finished or marketable product, who had discarded the processing liquid. There is some logic in this reasoning. By comparison, a similar federal statute has specifically addressed this issue by requiring a greater gram weight of a mixture containing methamphetamine than consumable methamphetamine. 21 U.S.C. sections 841(b)(1)(B)(viii)[3]. The Iowa legislature, however, has not elected to separately speak to this issue.

The State argues the plain meaning of the statute allows for the whole amount of the liquid contained in the glass jar to be used in computing the statutory gram weight. In support of that position, the State points to the state criminologist's report concluding that it was not possible to estimate the yield of the manufacturing operation from the sample provided. Indeed, her report seems to indicate the

---

1. This form of methamphetamine was not challenged on appeal. *See State v. Casady*, 597 N.W.2d 801, 808 (Iowa 1999) (the trial court did not err by taking judicial notice of this form of methamphetamine).

2. Iowa Code sections 124.401(1)(b)(1), (3), and (4).

3. This code section states, "5 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers."

liquid seized was in a post manufacturing stage.

The statute specifically states the amount must be five grams or more of "methamphetamine ... or any compound, mixture, or preparation which contains any quantity or detectable amount of methamphetamine...." Iowa Code section 124.401(1)(b)(7) (1997). It does not specify any particular stage of the manufacturing or post-manufacturing process, nor does it indicate an expected yield must be estimated or a pure form must be extracted in order to weigh the narcotic. Although the federal statute seems to require an estimated yield of methamphetamine before sentencing can be entered, the Iowa statute does not require this step as a methamphetamine mixture is prohibited at the same gram weight as completed methamphetamine. *See United States v. Jennings,* 83 F.3d 145, 149 (6th Cir.1996); *see also United States v. August,* 86 F.3d 151, 155 (9th Cir.1996). The State contends the legislature specifically worded the statute as it is written because the intent was to proscribe the possession of not just the finished product, but all stages of the manufacturing process. Iowa Code section 124.401(1)(b)(7) (1997). Hence the use of the words "any quantity or detectable amount."

When applying principles of statutory construction, we must use the common or ordinary meaning if the legislature has not provided a definition of the terms used. *State v. Romeo,* 542 N.W.2d 543, 548 (Iowa 1996). The court cannot read into a statute something that the legislature did not make apparent by the language. *State v. Guzman–Juarez,* 591 N.W.2d 1, 2 (Iowa 1999).

We find the statute is plain on its face and does include any compound or mixture which contains any quantity or detectable amount of methamphetamine. Despite Rivera's arguments to the contrary, the plain meaning of the statute clearly includes methamphetamine in a less-than-finished state. The statutory weight was, therefore, satisfied by including the weight of the liquid seized as it contained a detectable amount of methamphetamine.

Rivera next argues the weight of the liquid was never accurately measured but was based solely on conjecture. The record includes the testimony of several witnesses stating the gallon size jar was one quarter full of the liquid which, proven by a sample analysis, contained a methamphetamine mixture in liquid form. This testimony was corroborated by a photograph of the jar which clearly portrayed the amount of liquid it contained. The testimony also provided that the amount of liquid contained in the jar was in excess of the 10.7 ounce can of ether which was also seized. The record further shows that the 10.7 ounce can contained 303 grams of ether. Therefore, the court had substantial evidence to draw an inference that the liquid containing the methamphetamine weighed more than five grams as required by the statute.

Rivera also raises a spoliation issue in his brief as to the glass jar and the discarded liquid contents. As a rule, a defendant must preserve error by making an objection at the earliest opportunity after the grounds for the objection become apparent. *State v. Johnson,* 476 N.W.2d 330, 333 (Iowa 1991). Rivera did not object when this evidence was established at trial. He raises this issue for the first time on appeal. *See State v. Pardock,* 215 N.W.2d 344, 347 (Iowa 1974). Therefore, he has not preserved error for this issue to allow review by this court.

Having considered all issues properly before us on appeal, we hereby affirm the conviction.

**AFFIRMED.**