# IN THE COURT OF APPEALS OF IOWA

No. 16-0558
Filed August 2, 2017

**JOANNE COTE,**
        Plaintiff-Appellee,

**vs.**

**DERBY INSURANCE AGENCY, INC., an Iowa Corporation,
and KEVIN DORN, Individually,**
        Defendants-Appellants.
_____

        Appeal from the Iowa District Court for Woodbury County, Jeffrey L. Poulson, Judge.

        On this interlocutory appeal, the defendants challenge the district court's denial of their motion for summary judgment. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**

        Edward F. Pohren and Aaron F. Smeall of Smith, Slusky, Lazer, Pohren & Rogers, L.L.P., Omaha, Nebraska, for appellants.

        Jay Denne and Stanley E. Munger of Munger, Reinschmidt & Denne, L.L.P., Sioux City, for appellee.

        Heard by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**PER CURIAM.**

Joanne Cote worked for Derby Insurance Agency from 1998 until 2014. In 2014, she sued the agency and Kevin Dorn (collectively, Derby),[1] alleging sexual discrimination based on a hostile work environment, as well as the torts of intentional infliction of emotional distress and assault. On interlocutory appeal, Derby challenges the district court's denial of its motion for summary judgment, first arguing it is exempt from the provisions of the Iowa Civil Rights Act (ICRA) because it had less than four employees and, second, contending all of Cote's claims are either time barred, preempted, or fail to raise a question of material fact.

On the employee-numerosity issue, the district court appropriately decided Derby, as a corporation, did not qualify for the statutory exemption for "members of the employer's family." Iowa Code § 216.6(6)(a) (2014). Accordingly, Derby is subject to the ICRA. On the statute-of-limitations issues, the district court correctly found Cote alleged inappropriate actions that occurred within the limitations periods. Derby failed to secure a district court ruling on its argument the alleged torts were preempted by the ICRA. Thus, we decline to address the preemption issue. On the intentional-infliction-of-emotional-distress claim, we find sufficient evidence of "outrageous conduct" to generate a jury question. But on the assault claim, we conclude the court should have granted summary judgment to Derby. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

---

[1] This action originally involved a claim of retaliation against Derby Insurance Services, Inc., the successor entity to Derby Insurance Agency, which purchased the company in October 2012. But that entity was dismissed from the matter in November 2015.

## I.    Facts and Prior Proceedings

We start with an overview of the facts from the summary judgment record, taken in the light most favorable to Cote, the nonmoving party.  *See Roll v. Newhall*, 888 N.W.2d 422, 425 (Iowa 2016).  Derby is organized as an Iowa subchapter "S" corporation.  Its president and sole shareholder is Patricia Dorn, who is married to Kevin Dorn.  Cote started work for Derby as a customer-service representative.  In 2003, she was promoted to office manager.

Cote alleges Kevin Dorn sexually harassed her and other female colleagues over a period of seven years.[2]  The first complaint came from employee Sandy Dobson, who told Cote in 2005 that Dorn came into Dobson's office and exposed his genitals to her.  According to Cote, she and Dobson "talked it out and both agreed it was a fluke thing."  But when Dorn again exposed himself to Dobson a short time later, Dobson began documenting the incidents.  In her affidavit, Dobson reported being "shocked" by Dorn's behavior.  Cote recalled Dorn exposing himself to Dobson one or two more times before Dobson ended her employment with Derby.  Neither Cote nor Dobson took any additional action at that time.

Dorn renewed his pattern of harassing behavior about two years later—exposing his genitals to Derby employee Stephanie Ptak.  According to Cote, the incident occurred in the front area of the office while Dorn was standing at the facsimile machine.  Cote was gone for lunch when Dorn approached Ptak, but Ptak disclosed the harassment to Cote as soon as she returned to the office.

---

[2] For convenience, we will refer to Kevin Dorn as Dorn, and to the extent necessary, we will refer to Patricia Dorn by her full name.

Like Dobson, Ptak ended her employment with Derby before either she or Cote took any further action. Cote shared information about Dorn's conduct toward Dobson and Ptak with another female coworker at the time it occurred.

After Dobson and Ptak left Derby, Dorn turned his sexual harassment toward Cote, according to her affidavit. The first incident was in 2007, when she was working "up front in the customer services area." She alleged: "[N]o one else was present because it was early in the morning and I was generally the only person who showed up for work on time before 8:30 a.m." She claimed Dorn came around her desk "with an obvious erection in his pants." She stated: "I didn't want to believe that he was sexually harassing me at first because I was older than Sandy and Stephanie, but as he kept doing it, it was obvious."

Cote alleged in her affidavit that Dorn "did the same thing several times per year." Cote also described several of these harassing incidents in her complaint to the Iowa Civil Rights Commission (ICRC). She recalled that during one incident when Dorn stood particularly close to her, she reached for some papers and accidentally touched his penis with the back of her hand. In an April 2011 encounter, Dorn stood near Cote asking her questions; Cote answered but did not look at him, fearing he would be exposing his genitals. Dorn left and then returned, faced Cote, and again asked her a question. Cote made eye contact with Dorn, trying to avoid looking at his crotch. But she "could tell his pants were unzipped, and gaping open." Dorn left Cote's area when another Derby employee arrived in the parking lot.

Cote described another incident of harassment that occurred in Dorn's vehicle. She recalled Dorn would sometimes drive her to work during the winter

when the weather was bad. During one such trip, Dorn "drove the whole way to work with his right hand groping his crotch and left hand on the steering wheel."

Cote also discussed an incident from February 2012, in which Dorn stood near the facsimile machine and asked her questions. When she looked at Dorn, "his pants were unzipped and gaping open." On one occasion during March 2012, Dorn came to her "sexually aroused wanting [her] to look at him by asking [her] stupid questions." Cote recalled that Dorn continued to similarly harass her "periodically" throughout June and July 2012. She alleged Dorn "would come wandering around my work area, either asking me about something, or not saying anything at all." In her ICRC complaint, Cote wrote: "I IMMEDIATELY feel my body tense up and try not to look at him. I am confident he is 'displaying' himself again (like always), because I can tell by his demeanor."

Cote asserted Dorn stopped harassing her "around August 1, 2012." She filed her ICRC complaint on April 10, 2013. The ICRC issued an administrative release, commonly called a right-to-sue letter, on January 10, 2014. Cote filed her petition in April 2014, alleging a hostile work environment[3] and sex-based discrimination claim. Cote amended her petition in May, asserting Dorn had assaulted her and intentionally inflicted emotional distress.

In December 2015, Derby filed a motion for summary judgment. In March 2016, the district court denied Derby's motion, with the exception of "grant[ing]

---

[3] "Hostile work environment claims are actionable '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Farmland Foods, Inc. v. Dubuque Human Rights Comm'n*, 672 N.W.2d 733, 743 (Iowa 2003) (citation omitted).

summary judgment on Cote's [tort] claims to the degree that they are based on events that occurred before April 7, 2012."

Derby appeals; Cote has not cross-appealed.[4]

## II.    Scope and Standards of Review

We review the district court's denial of summary judgment for correction of legal error.  *See Jones v. Univ. of Iowa*, 836 N.W.2d 127, 139 (Iowa 2013).

> [S]ummary judgment is appropriate if the record reveals a conflict only concerns the legal consequences of undisputed facts.  When reviewing a court's decision to grant summary judgment, we examine the record in the light most favorable to the nonmoving party and we draw all legitimate inferences the evidence bears in order to establish the existence of questions of fact.

*Id.* at 139-40 (quoting *Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 96-97 (Iowa 2012)).

"To the extent [an] appeal involves questions of statutory interpretation, we review for correction of errors at law."  *State v. Howse*, 875 N.W.2d 684, 688 (Iowa 2016) (citation omitted).  We construe the ICRA "broadly to effectuate its purposes."  Iowa Code § 216.18(1).  One purpose of the ICRA is to "eliminate unfair and discriminatory practices" in employment.  *Foods, Inc. v. Iowa Civil Rights Comm'n*, 318 N.W.2d 162, 170 (Iowa 1982).  "An Iowa court faced with competing legal interpretations of the [ICRA] must keep in mind the legislative direction of broadly interpreting the Act when choosing among plausible legal alternatives."  *Pippen v. State*, 854 N.W.2d 1, 28 (Iowa 2014).

---

[4] On April 22, 2016, the Iowa Supreme Court granted Derby's application for interlocutory appeal of the district court's denial of its motion for summary judgment.

### III.    Analysis

On appeal, Derby claims: (A) the district court erroneously interpreted Iowa Code section 216.6(6)(a) by finding the family-member exception does not apply to corporate employers; (B) the district court should have dismissed Cote's claims as untimely; (C) Cote's tort claims were preempted by the ICRA; and (D) Cote did not allege sufficient undisputed material facts to support the elements of her tort claims.

### A.  Employee-Numerosity Requirement/Family-Member Exception

Derby contends the ICRC and the district court should not have entertained Cote's claim of hostile work environment because Iowa Code section 216.6, governing unfair employment practices, does not apply to businesses having less than four employees.[5]   This employee-numerosity requirement is expressed in the statute as follows: "This section shall not apply to . . . [a]ny employer who regularly employs less than four individuals.  For purposes of this subsection, individuals who are members of the employer's family shall not be counted as employees."  Iowa Code § 216.6(6)(a); *see also Simon Seeding & Sod, Inc. v. Dubuque Human Rights Comm'n*, 895 N.W.2d 446, 458 (Iowa 2017) (holding numerosity requirement is "a merits-based element of proof required for liability, rather than a jurisdictional prerequisite").

The legislature enacted the employee-numerosity requirement during revisions to the state civil rights statute in 1965.  *See Baker v. City of Iowa City*, 750 N.W.2d 93, 101 (Iowa 2008).  The rationale behind this new statutory

---

[5] Derby claims the insurance agency did not employ more than four people when its payroll included owner Patricia Dorn; her husband, Kevin Dorn; her niece, Patricia Strawn; and her grandniece, Jasmine Derby.

exclusion of small businesses from employment-discrimination prohibitions was explained by Professor Arthur Bonfield in a law review article published the year before the ICRA's enactment.  *See U.S. Jaycees v. Iowa Civil Rights Comm'n*, 427 N.W.2d 450, 454 (Iowa 1988) (citing Arthur Bonfield, *State Civil Rights Statutes: Some Proposals*, 49 Iowa L. Rev. 1067 (1964)).  Noting most statutes governing employment practices exempt small employers, Bonfield wrote: "The general consensus seems to be that notions of freedom of association should preponderate over concepts of equal opportunity in these situations because the smallness of the employer's staff is usually likely to mean for him a rather close, intimate, personal, and constant association with his employees."  49 Iowa L. Rev. at 1109 (footnotes omitted).

When examining the employee-numerosity provision, the district court found, and the parties do not dispute, the first sentence of section 216.6(6)(a)—providing an exemption for an "employer who regularly employs less than four individuals"—applies to incorporated employers.  As noted by the district court, "The more difficult issue is whether the family members of the shareholders of a closely-held corporation may be considered 'members of the employer's family.'"  The district court reasoned:

> The meaning of this phrase is not readily apparent, and chapter 216 does not itself provide a definition for it.  Reasonable minds could differ as to its meaning, to wit, whether the legislature intended courts to count members of shareholders' and/or board members' families when determining whether a closely-held corporation has fewer than four employees.

The district court concluded this phrase was ambiguous.  We agree.

"A statute is ambiguous if reasonable minds could differ or be uncertain as to the meaning of the statute." *Mall Real Estate, L.L.C. v. City of Hamburg*, 818 N.W.2d 190, 198 (Iowa 2012) (citation omitted). "Ambiguity may arise from specific language used in a statute or when the provision at issue is considered in the context of the entire statute or related statutes." *Id.* (citation omitted). Courts must not interpret ambiguous statutes in a manner that would lead to an absurd result. *Iowa Ins. Inst. v. Core Grp.*, 867 N.W.2d 58, 75 (Iowa 2015). Our task is to read statutes as a whole, rather than looking at words or phrases in isolation. *Id.* at 73.

Derby does not argue the full phrase, "members of the employer's family," is unambiguous. Rather, Derby contends the district court failed to recognize the component term—"employer"—lacked ambiguity. The ICRA defines "employer" as "the state of Iowa or any political subdivision, board, commission, department, institution, or school district thereof, and every other person employing employees within the state." Iowa Code § 216.2(7). Within the statutory definition of "employer," Derby seizes on the component term—"person." The ICRA defines "person" as "one or more individuals, partnerships, associations, corporations, legal representatives, trustees, receivers, and the state of Iowa and all political subdivisions and agencies thereof." *Id.* § 216.2(12). Derby then surmises the definition of "employer" within the full phrase "members of the employer's family" must include incorporated employers.

Derby contends the district court imposed an extra-statutory limitation, essentially transforming the phrase "members of an employer's family" into "members of an *individual* employer's family." Derby argues the statutory

language selected by the legislature did not contemplate the court's limitation. *See State v. Rivera*, 614 N.W.2d 581, 584 (Iowa Ct. App. 2000) ("The court cannot read into a statute something that the legislature did not make apparent by the language."). Derby notes the drafters used the term "individual" earlier in the subsection when referring to employees and asserts that use indicates the legislature's omission of the term when referring to the employer was purposeful.

Derby also decries the district court's conclusion the statute's first sentence applies to corporations while the second does not, when the drafters used the same term—"employer"—in both sentences. *See State v. Richardson*, 890 N.W.2d 609, 619 (Iowa 2017) ("When the same term appears multiple times in the same statute, it should have the same meaning each time." (citation omitted)). Derby argues the legislature did not intend for small business owners to be deprived of the full protections of section 216.6(6)(a) if they elected to function as a corporation. Derby contends the right to "free association" mentioned by Professor Bonfield "does not have corporate limits."

Cote defends the district court's interpretation, arguing a corporation, "being a fictitious entity," cannot have family members. *See Kerrigan v. Errett*, 256 N.W.2d 394, 396 (Iowa 1977) (holding, when the negligence of a corporate operation causes injury to an employee, not all corporate employees become liable). Cote further asserts neither Iowa Code section 216.2 nor section 216.6 indicates "family members of shareholders or corporate directors may be counted when determining whether the family exception applies."

Addressing the "familiar legal fiction" that corporations may enjoy the same legal protections as "persons," Derby relies on *Burwell v. Hobby Lobby*

*Stores, Inc.*, 134 S. Ct. 2751, 2767-68 (2014), which held the definition of "person" within the federal Religious Freedom Restoration Act (RFRA) included for-profit corporations whose owners had religious objections to complying with the health insurance contraceptive mandate of the Affordable Care Act. Derby asks this court to extend *Hobby Lobby* to its situation, contending the family-member exception in section 216.6(6)(a) should not be "stripped away" by a business owner's decision to operate as "something other than a sole proprietor."

We do not find *Hobby Lobby* persuasive authority for a conclusion a corporation can have family members. In interpreting the RFRA definition, the Supreme Court recognized the word "'person' sometimes encompasses artificial persons . . . , and it sometimes is limited to natural persons." *Hobby Lobby*, 134 S. Ct. at 2769. What was most concerning to the *Hobby Lobby* majority was the government's position that the definition of "persons" could include "natural persons *and nonprofit corporations*, but not for-profit corporations." *Id.* (emphasis added). In the context of the ICRA's specific reference to *family members* of an employer, we believe "employer" means a natural person. *See id.* (stating term "person" can be "limited to natural persons")

We find a line of cases in the auto-insurance realm to be more on point than *Hobby Lobby*. Numerous states, including Iowa, have held that where the "boilerplate" language of an uninsured motorist policy issued to a corporation as the insured also covers any *family member* of the insured, the language is a nullity. *See Huebner v. MSI Ins. Co.*, 506 N.W.2d 438, 440-41 (Iowa 1993) (reasoning "since ALCECO has no family members because [it is] a corporation, the only party covered under 'you or any family member' can be ALCECO"); *see*

*also Bermel v. Liberty Mut. Fire Ins. Co.*, 56 A.3d 1062, 1071 (Del. 2012) (holding a corporation can neither have "family members" nor suffer "bodily injury"); *Varro v. Federated Mut. Ins. Co.*, 854 So. 2d 726, 728 (Fla. Dist. Ct. App. 2003) (same); *Sears by Sears v. Wilson*, 704 P.2d 389, 392 (Kan. Ct. App. 1985) (same).

As we strive to interpret the terms in section 216.6(6)(a), we note the legislature opened the ICRA's definitional section by warning that the listed words would have the following meanings "unless the context otherwise requires*." See* Iowa Code § 216.2. This warning about context is relevant when deciding which of the assorted definitions of "person" from section 216.2(12) is practical to apply when we construe other statutory provisions. Not all the definitions of "person" fit with the varied uses of the word in chapter 216. For example, a "person" may sometimes mean one or more "partnerships, associations, or corporations" but not as "person" is used in the "familial status" or "gender identity" definitions in section 216.2(9)[6] and (10).[7] Obviously, a corporation cannot be pregnant or have an assigned sex at birth. *See id.* § 216.2(9), (10). Similarly, as the district court decided, a corporation cannot have family members. *See Sears*, 704 P.2d at 392 (recognizing a corporation does not have family members related to it by blood, marriage, or adoption).

---

[6] "Familial status" is defined as "one or more individuals" who are "under the age of eighteen" and "domiciled with one of the following: (1) A parent or another person having legal custody of the individual or individuals. . . . (3) A person who is pregnant or is in the process of securing legal custody of the individual or individuals." Iowa Code § 216.2(9)(a).

[7] "'Gender identity'" means "a gender-related identity of a person, regardless of the person's assigned sex at birth." Iowa Code § 216.2(10).

Derby's assertion that an incorporated employer can have family members requires a layer of assumptions not contemplated by the legislature. Derby offers no practical explanation for how courts should apply the term "members of the employer's family" to corporations. For example, should the term, "family members," extend to all shareholders or directors of the closely held corporation? The legislature did not include any direction in section 216.6(6)(1) for determining the individuals in the corporate structure who may be counted either as a "family member" or as having family members. Neither did the legislature include any direction in section 216.6(6)(a) for determining the individuals in a corporation considered exempt from the count of individual employees. We decline to take on that task here.

The value placed on "free association" for the owners of small businesses, as articulated by Professor Bonfield, is protected by the first sentence of section 216.6(6)(a), exempting employers who hire less than four individuals. The complications arising when a court attempts to determine whether specific individual corporate employees are *members of a corporation's family*—under the following sentence—are better left to legislative drafters.

We conclude the word "employer," in the context of section 216.6(6)(a)'s phrase "members of the employer's family,"[8] is limited to "individuals" as a subset of "person" and as part of the definition of "employer" in section 216.2. Overall,

---

[8] Our review of seventeen Iowa Code definitions of "family members" reveals some variations, depending on the particular statute and the legislature's objectives. But the common theme is a relationship by blood or marriage. *See* Iowa Code §§ 46.14(2), 68A.302(2)(k), 135B.9(1)(a), 135C.16A, 225C.35, 231C.3A, 235F.1(6), 298A.15(5)(c), 459.102(29), 483A.24(2)(a)(1), 515G.13, 535D.3(4), 602.6502, 633.201, 708.11(1)(c), 720.7(1)(b), 722.11(1)(a).

the purpose of the ICRA is to end discrimination in the workplace. *See Foods, Inc.*, 318 N.W.2d at 170. Here, we broadly interpret the statute to require incorporated employers with more than four employees—without applying the family-member exception—to follow the nondiscriminatory practices outlined in the ICRA. *See Pippen*, 854 N.W.2d at 28 (directing courts facing competing legal interpretations to choose the interpretation most protective of employees among the plausible legal alternatives).

## B. Statute of Limitations

Derby alleges all of Cote's claims are untimely.[9] We start with the claims raised under the ICRA. A complaint must be filed with the ICRC within 300 days after the alleged discriminatory act. *See* Iowa Code § 216.15(13). Derby acknowledges hostile-work-environment claims "involve repeated conduct and are based on the cumulative impact of separate acts." *Farmland Foods*, 672 N.W.2d at 741 (discussing difference between claims of discrete discriminatory acts where each claim must meet the relevant limitation period and the "fundamentally different" claim of "hostile work environment"). Thus, "it makes no difference that some of the component acts fall outside the period of limitations" if

---

[9] Cote contends the timeliness of her claims is not properly before us because Derby failed to raise that issue in its application for interlocutory appeal, which alleged the district court misinterpreted Iowa Code section 261.6(6)(a). Cote concludes Derby cannot raise this issue now because the Iowa Supreme Court did not decide the time-bar issue satisfied Iowa Rule of Appellate Procedure 6.104(2) (stating "[t]he supreme court may grant permission to appeal on finding that such ruling or order involves substantial rights and will materially affect the final decision and that a determination of its correctness before trial on the merits will better serve the interests of justice"). Cote cites no authority that this rule—which addresses when it is proper to grant an interlocutory appeal—limits the issues that may be raised once permission to appeal is granted. We conclude the issue is properly before us. *Cf. Papillon v. Jones*, 892 N.W.2d 763, 769 (Iowa 2017) (explaining on further review, supreme court may review any or all issues raised on appeal or may limit its review to those issues brought to its attention in the application for further review).

"an act contributing to the [hostile-work-environment] claim occurs within the filing period." *Id.* (citation omitted). Under such a circumstance "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* (citation omitted).

But Derby argues Cote has failed to identify any acts constituting harassing conduct that were committed by Dorn within the applicable time frame, as necessary to bring the entirety of Cote's hostile-work-environment claim within the statute of limitations. *See Lynch v. City of Des Moines*, 454 N.W.2d 827, 832 (Iowa 1990) (noting claim of sexually hostile work environment is viewed as a "continuing violation" so long as "the discriminatory practice continued within the limitations period"). Cote counters her claim is timely because the acts she alleged Dorn committed *within* the statutory time-frame was conduct replicating his earlier harassment.

As stated in her appellate brief, during the period not precluded by the statute of limitations, Cote alleges the following occurred:

> [Dorn] continued to come into Cote's working area during the summer months, through the beginning of August 2012, on several occasions during the early morning when no one else was there. He would wander in her work area, sometimes to ask her something, or sometimes not saying anything at all. Because [Dorn and Cote] were alone, and Cote was afraid of him due to his long pattern of sexually offensive behavior in front of her, she would immediately tense up and try not to look at him. She would look away and pretend she was on her phone.
> Cote knew he was trying to get her to look at him and his private parts because of his pattern of behavior and the only times when he would walk into her area during the early morning when no one else was there was when he had an erection. It was obvious from his demeanor that he was there to harass her. Cote . . . tried to avoid him as much as possible, but he kept coming in to her area anyway for no apparent reason other than to harass her.

In response, Derby argues Dorn's conduct in the first two months of the summer of 2012 did not constitute harassment because Cote declined to look at his crotch area and her belief that he was creating a hostile work environment was "merely conjecture."

Rejecting Derby's argument, the district court aptly reasoned:

Indeed, as to [the timely] time frame, Cote does not state that she saw Dorn exposing himself. Rather, she states that she feared Dorn was doing so on multiple occasions and, accordingly, that she tried not to look at him[.] . . .
. . . .
Defendants point out that Cote does not state, in her ICRC complaint, that she actually saw Dorn exposing himself at any point past June 15, 2012, the outer limit of the limitation period of section 216.15(13). The issue here, however, is not whether Cote actually saw Dorn's genitals during June or July 2012. Rather, the issue is whether Dorn subjected Cote to sexual harassment during that time frame. Cote clearly states that she thought Dorn was exposing himself in her presence during this timeframe . . . .

The district court further explained:

At trial, Cote will have to prove that Dorn was actually exposing himself during these months and not that he was, e.g., merely walking in her workspace fully clothed for some legitimate work-related purpose. Needless to say, Cote will have difficulty doing so if she did not actually see Dorn expose himself to her. If, however, Dorn always exposed himself in a very similar way (e.g., from a certain location, with a certain demeanor, while asking certain types of questions, etc.), Cote may be able to convince the factfinder that Dorn continued to harass her during June and July of 2012.

Derby complains "the only fact Cote adduced is that periodically during June or July of 2012, Dorn and she were present in the same work area at the same time."

Like the district court, we conclude Cote's statements in her affidavit and civil-rights complaint generate a material issue of fact as to whether Dorn's

harassing conduct continued until early August 2012. Derby suggests that because Cote stopped looking to see if Dorn had an erection on the occasions when he wandered into her work space in the early morning hours "when no one else was there," the factual support for her sexual harassment claims is too speculative to survive summary judgment. We disagree.

In this case, we are not assessing the viability of an indecent-exposure complaint where the offensive display must be viewed by a victim. *Contrast State v. Jorgensen*, 758 N.W.2d 830, 835 (Iowa 2008) (describing indecent exposure as "essentially a visual assault crime"). Instead, the predicate acts supporting a hostile-environment sexual-harassment claim need not be explicitly sexual in nature. *See Kopp v. Samaritan Health Sys., Inc.*, 13 F.3d 264, 269 (8th Cir. 1993) (stating "key issue 'is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed'" (citation omitted)); *Hall v. Gus Constr. Co., Inc.*, 842 F.2d 1010, 1014 (8th Cir. 1988) (same). Further, "hostile-work-environment claims by their nature involve ongoing and repeated conduct, not isolated events." *Farmland Foods*, 672 N.W.2d at 745.

Cote produced a summary judgment record to support a pattern of Dorn exposing his genitals to female employees at the insurance company since 2005. In her affidavit, Cote revealed that starting in 2007, Dorn made a habit of coming around her desk in the customer-service area of the business "early in the morning" when she was the only person present and standing next to her desk with "an obvious erection in his pants." In her affidavit, she swore he wanted her to see his erection because he "had no reason" to come into her work area and

stood with his groin "close to her face." Dorn continued this practice several times per year for the next several years, according to Cote's affidavit. Cote recalled similar incidents in 2011 and 2012 when Dorn's pants were unzipped and "gaping open."

When Dorn continued his practice of coming into Cote's work area in the early morning when they were alone in the office during the summer of 2012, she believed "he was trying to get me to look at him and his private parts." She concluded: "It was obvious from his demeanor that he was there to harass me." She also stated: "[T]hese incidences ended around August 1," when Dorn was "totally consumed" with merging the business and also with buying an out-of-state home. Dorn's behavior during the summer of 2012 matched his earlier pattern of sexual harassment—subjecting Cote to the same unwelcome advances. The practice only stopped when Dorn was attending to the company's merger and a personal move. Given his repetitious behavior, Cote did not need to confirm that Dorn again had an erection to establish his discriminatory acts constituted a hostile work environment that stretched into the requisite time period.

At the summary-judgment stage, in deciding if a genuine issue of material fact exists, we resolve all disputed facts and draw all inferences in favor of the plaintiff. *See Kern v. Palmer Coll. of Chiropractic*, 757 N.W.2d 651, 657 (Iowa 2008). Doing so here, we find Cote has generated a jury question that Dorn's actionable conduct occurred during the requisite time period. Cote alleged sufficient undisputed material facts to support the elements of her claims of a hostile work environment.

Similarly, we agree with the district court's assessment that Cote generated a jury question on the occurrence of harassing actions by Dorn after April 7, 2012, and thus met the tort statute of limitations. Specifically, the district court found the events before April 7, 2012, were time-barred by Iowa Code section 614.1(2), which imposes a two-year statute of limitations "on injuries to the person" based on tort. Cote has not appealed the district court's limited grant of summary judgment.[10] But the district court denied summary judgment as to events that occurred on or after April 7, 2012. Derby argues there is insufficient evidence as a matter of law that the conduct giving rise to Cote's tort claims occurred on or after April 7, 2012. In response, Cote contends: "Given [Dorn's] longstanding pattern of exposing himself and standing next to her with an erection, a jury could conclude that those actions continued to occur in the summer of 2012." For the reasons detailed above, we affirm the district court on the statute-of-limitations issues.

### C.    Preemption of Tort Claims by the ICRA

Derby argues, in the event we find the employee-numerosity requirement was satisfied and Cote's claims were not time barred, her common law actions are preempted because neither tort is "separate and independent" of the hostile-work-environment claim under the ICRA. Cote contends we need not reach the merits of Derby's argument because error was not preserved. In reply, Derby argues the preemption issue is not subject to the error-preservation rule because

---

[10] Although on appeal Cote does argue "the pre-statute of limitations conduct should be considered as a part of a continuous tort."

the district court's ruling denying summary judgment is not a final order, but rather interlocutory and not subject to a claim of waiver.

"Preemption occurs unless the [tort] claims are separate and independent, and therefore incidental, causes of action." *Greenland v. Fairtron Corp.*, 500 N.W.2d 36, 38 (Iowa 1993). Cote's tort claims "are thus preempted if she must prove discrimination to be successful in them." *Id.*; *see Van Baale v. City of Des Moines*, 550 N.W.2d 153, 156 (Iowa 1996) (stating "traditional tort causes of action are not preempted by statutory remedies when the rights asserted in the tort claim are different from the rights protected by the statute" (citation omitted)).

We agree the denial of summary judgment was not a final order. And we agree that until the district court has issued a final order, "it has the power to correct any of the rulings, orders or partial summary judgments it has entered." *See Carroll v. Martir*, 610 N.W.2d 850, 857 (Iowa 2000). But we are unable to consider Derby's preemption argument without a district court ruling to review. "We are a court of review, not a nisi prius court." *State v. Holbrook*, 261 N.W.2d 480, 482 (Iowa 1978). An exception to this rule exists for subject-matter-jurisdiction questions. *Crowell v. State Pub. Def.*, 845 N.W.2d 676, 681 (Iowa 2014) (noting appellate courts may *sua sponte* raise subject matter jurisdiction). But preemption is not "tantamount to lack of subject matter jurisdiction." *See Ackerman v. Am. Cyanamid Co.*, 586 N.W.2d 208, 214 n.3 (Iowa 1998). Accordingly, we decline to address the preemption issue on interlocutory appeal.

**D. Sufficiency of Undisputed Material Facts to Support Tort Claims**

**1. Intentional Infliction of Emotional Distress**

To be liable for the tort of intentional infliction of emotional distress, Cote must prove the following elements: (1) outrageous conduct by Dorn, (2) Dorn's intentional causing or reckless disregard of the probability of causing emotional distress, (3) Cote's suffering severe or extreme emotional distress, and (4) Dorn's outrageous conduct was the "actual proximate causation" of Cote's emotional distress. *See Van Baale*, 550 N.W.2d at 156. Our supreme court provides the following definition of "outrageous" conduct:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim "Outrageous!"

*Smith v. Iowa State Univ.*, 851 N.W.2d 1, 26 (Iowa 2014) (citation omitted).

As noted above, Cote alleged Dorn, until August 2012, would expose himself or otherwise act inappropriately toward her when she was alone with him early in the morning at work. After finding the events before April 7, 2012, could not serve as the basis of Cote's tort claim, the district court went on to reason: "This Court believes a reasonable jury could find that the repeated showing of an erection, covered or uncovered, to a female coworker is the type of outrageous conduct for which a Plaintiff may recover in tort." We agree. When viewed in the light most favorable toward Cote, we find Dorn's conduct would lead an average member of the community to exclaim, "Outrageous!" *See id.* We, like the district court, find a genuine issue of material fact on the claim of intentional infliction of

emotional distress and affirm on this issue. *See id.* ("Where reasonable men may differ, it is for the jury . . . to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." (citation omitted)).

### 2. Assault

To hold Dorn liable for assault, Cote has to prove Dorn committed: "(1) an act intended to put [Cote] in fear of physical pain or injury; [or] (2) an act intended to put [Cote] in fear of physical contact which a reasonable person would deem insulting or offensive; and [Cote] reasonably believes that [Dorn's] act may be carried out immediately." *Greenland*, 500 N.W.2d at 38 n.4; *see also* Iowa Code § 708.1. Thus, assault in Iowa requires fear of physicality, either a fear of *physical* pain or injury or fear of objectively unreasonable *physical* contact that could be done immediately. *See id.* (noting plaintiff alleged "six instances of inappropriate touching").

In denying summary judgment, the district court found: "Cote's statements suggest that Dorn stood very near Cote when showing his erection to her—so near her, in fact, that she accidentally touched his penis with her hand on one occasion." But here, unlike *Greenland*, Cote has not alleged Dorn touched her inappropriately. Further, the district court recognized the sole physical contact between Dorn and Cote during Dorn's inappropriate actions occurred only when Cote accidentally touched Dorn's penis. We conclude, based on Cote's assertions and under these circumstances, her claim Dorn intentionally assaulted her in the applicable time period fails. Accordingly, we reverse on this issue; the

district court should have granted summary judgment to Dorn on Cote's assault claim.

## IV. Conclusion

We agree with the district court's rejection of Dorn's claims regarding the family-member exception and statute of limitations. We decline to address the preemption issue. We affirm the court's conclusion Cote alleged sufficient undisputed material facts to support the elements of her claims of a hostile work environment and the intentional infliction of emotional distress. We reverse as to Cote's assault claim, finding Derby is entitled to summary judgment because Cote has not alleged sufficient undisputed material facts to support the elements of assault.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**

All judges concur except Mullins, J., who concurs in part and dissents in part.

**MULLINS, Judge** (concurring in part and dissenting in part)

I respectfully dissent in part and concur in part. Cote claims she was sexually harassed by Dorn, and Dorn intentionally inflicted emotional distress in June or July 2012 as part of a continuing pattern of conduct that had otherwise predated the statute of limitations. For the June or July 2012 claims, she was required to generate a genuine issue of fact, not speculation, conjecture, or belief, but fact. Other than his presence at a time and place that made her understandably uncomfortable, she presented no facts in support of her resistance to Derby's motion for summary judgment. Contrary to her evidence of observing an erection, unzipped pants, and other conduct that predated the expiration of the statute of limitations, on the June or July occasion(s) she claims occurred within the limitations period she did not observe an erection, unzipped pants, any genitalia, or any conduct that alone or in combination could support her claims. Likewise, she has reported no statements attributable to Dorn within that time frame.

In order for Cote to rely on the pre-statute of limitations conduct to support a claim of continuing harassment, she needed to have at least one instance of conduct within that limitations period that could satisfy her claims. I submit Dorn's presence near her in the office during business hours, without more, is not sufficient to raise a genuine issue of fact necessary to survive Derby's motion for summary judgment. So, I respectfully dissent to the affirmance of the district court on its denial of Derby's motion for summary seeking dismissal of the ICRA claim and the claim of intentional infliction of emotional distress. I concur in all other parts of the majority's opinion.