**STATE of Iowa, Appellee,**

v.

**Gary L. CARBERRY, Appellant.**

**No. 91–995.**

Supreme Court of Iowa.

June 16, 1993.

Rehearing Denied July 30, 1993.

Linda Del Gallo, State Appellate Defender, and B. John Burns, Asst. Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Thomas S. Tauber, Asst. Atty. Gen., Richard Crowl, County Atty., and Charles Stolz, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and SCHULTZ, CARTER, NEUMAN, and SNELL, JJ.

CARTER, Justice.

Defendant, Gary L. Carberry, appeals from a judgment and sentence convicting him of first-degree murder and the attempt to commit the murder of a witness to the crime. He contends that the district court erred in failing to instruct the jury on willful injury as a lesser included offense of murder in the first degree. He also asserts that his trial counsel was ineffective in failing to object to certain hearsay testimony, that the evidence on the attempted murder charge was insufficient to support the conviction, and that the district court failed to state adequate reasons for

imposing consecutive sentences on the two convictions.

The court of appeals reviewed defendant's contentions and affirmed his convictions on both counts by an equally divided vote. We granted further review. We now affirm the decision of the court of appeals and the judgment of the district court.

The trial information charged defendant with murdering Daniel Gilley on March 9, 1991, and then attempting to murder Patrick Hall, who was a witness to the crime. The State's evidence of defendant's involvement in the alleged crime was presented primarily through the testimony of Hall. Viewed in the light most favorable to the State, this evidence indicated that, on the morning of the alleged murder, Hall met defendant, Myre, and Gilley at the residence of Tina Roller. At about noon, defendant, Myre, and Gilley left to buy some beer. They returned to the Roller residence later in the afternoon, picked up Hall, and the four men traveled in defendant's pickup to an area near the Missouri River.

After defendant parked the pickup near the river and the occupants exited the vehicle, defendant and Gilley became engaged in a fistfight. After that fight broke up, a fight ensued between Myre and Gilley. In the course of the second fight, defendant joined in and struck Gilley several times on the face and body with a large tree limb. This altercation was taking place near the edge of the river somewhat removed from Hall's line of sight.

Hall testified that after defendant struck Gilley with the tree limb he could see defendant and Myre throwing rocks toward the area where Hall believed Gilley was lying on the ground. He described some of those rocks as being larger than a football. Later, defendant and Myre returned to the truck, and Gilley was not visible to Hall at that time.

Hall testified that when defendant and Myre returned to the truck they discussed between themselves whether Hall could be trusted not to reveal their actions with respect to Gilley or if they would need to kill Hall. Hall testified that defendant insisted that Hall could not be trusted, forced him from the truck, and held him while Myre went to fetch a large rock. Hall broke loose, dove into the river, and swam to safety. Gilley's dead body was found in the Missouri River thirteen days later.

Defendant testified in his own behalf. He admitted his initial altercation with Gilley. He testified that he only entered the fray between Gilley and Myre when Gilley had gained the advantage in that conflict, and defendant believed Gilley was about to kill Myre. He indicated that through his efforts Myre was able to overcome the advantage that Gilley had held. Defendant denied having any involvement in the altercation that took place thereafter between Myre and Gilley.

The district court denied defendant's motions for judgment of acquittal as to the attempted murder of Hall and submitted that charge to the jury. The court also submitted the charge of first-degree murder under alternative theories of willful, premeditated murder and felony murder, with willful injury as the underlying felony. The court instructed the jury as to the lesser included offenses of second-degree murder, voluntary manslaughter, and involuntary manslaughter. The court refused defendant's request to submit willful injury as a lesser included offense.

Other facts significant to this appeal will be detailed in our discussion of the legal issues presented.

## I. *Failure to Submit Willful Injury as a Lesser Included Offense.*

In answering defendant's contention that the district court erred in refusing to submit willful injury as a lesser included offense, the State concedes that willful injury was in fact a lesser included offense under the elements of willful premeditated murder contained in the court's marshaling instruction. The State urges, however, that reversal of defendant's conviction is not required because, as a result of the other lesser included offenses that were submitted and rejected by the jury, the failure to

submit willful injury was harmless. The State's argument in this regard is posited on the principle, recognized in *State v. Nowlin*, 244 N.W.2d 591, 596 (Iowa 1976), and *State v. Drosos*, 253 Iowa 1152, 1164–65, 114 N.W.2d 526, 533 (1962), that, when one or more lesser included offenses are submitted to the jury and a conviction of the greater offense is returned, there is no prejudice in the failure to submit additional included offenses.

■ Defendant urges that the harmless-error principle upon which the State relies is subject to exceptions. He contends that this principle does not apply when the omitted lesser included offense embraces the defendant's primary theory of defense. He argues that, although his primary theory was self-defense in the aid of Myre, his admission of having beaten Gilley rendered willful injury a likely verdict if he was only partially believed.

The argument that defendant is making is based on his interpretation of *State v. Mikesell*, 479 N.W.2d 591 (Iowa 1991). We stated in that case that:

> The two lesser-included offenses actually submitted by the jury do not similarly coincide with Mikesell's defense theory, and the jury's rejection of those lesser offenses does not demonstrate to our satisfaction that the jury would have rejected Mikesell's defense theory if given complete instructions.

*Id.* at 592.

We believe the exception applied in *Mikesell* does not extend to all instances in which the rejected lesser included offense embraces a defendant's theory of the case. It only relates to situations in which the differences between the offenses that were submitted and the included offense that was not submitted are such that it may not be reasonably concluded that the rejection of the former is also a rejection of the latter. *See State v. Donelson*, 302 N.W.2d 125, 135 (Iowa 1981).

■ In analyzing whether prejudice occurred in the present case, we are struck with the similarity of the elements between willful injury and involuntary manslaugh-

ter. The elements of willful injury, as illustrated in Iowa Uniform Criminal Jury Instruction 800.10 are:

> The State must prove all of the following elements of Willful Injury:
>
> 1. On or about the [date of the crime], the defendant (*set forth acts of assault*).
>
> 2. The defendant specifically intended to cause a serious injury to (*victim*).
>
> 3. (*Victim*) sustained a serious injury.

The elements of involuntary manslaughter set forth in the district court's marshaling instruction in the present case were as follows:

> The State must prove all of the following elements of involuntary manslaughter:
>
> 1. On or about the 9th day of March, 1991, the defendant recklessly beat Daniel K. Gilley.
>
> 2. The defendant beat Daniel K. Gilley in a manner likely to cause death.
>
> 3. By doing the act of beating Daniel K. Gilley, the defendant unintentionally caused the death of Daniel K. Gilley.

The primary distinction between the elements of the lesser included offense of involuntary manslaughter that was submitted and the elements of willful injury is that in the former a reckless assault must be proven and in the latter an assault intended to cause serious injury. The differences between a reckless assault and an intentional assault are not sufficient in our view to present the likelihood that a jury that rejected the involuntary manslaughter verdict as an alternative to murder would have returned a willful injury verdict as an alternative to a homicide conviction.

We are also cognizant that, in comparing the elements of voluntary manslaughter and willful injury, the latter does not require proof of the ensuing death of the victim. This distinction does not weigh heavily, however, in the harmless-error analysis in the present case. Although factual basis has been largely abandoned as a predicate for instructing on lesser included offenses, it continues to play an essential role in a harmless-error analysis. The defendant is not controverting the State's claim that an underlying felonious assault

caused Gilley's death. He only contends that he was not involved in that assault, but rather in an earlier assault that did not produce death. For purposes of determining lesser included offenses, a felonious assault outside the causal chain on which the theory of prosecution is based is not a lesser included offense of the homicide charged. It is a separate and distinct crime. For this reason, we conclude that the crime of willful injury that would have been a lesser included offense under the State's theory of prosecution was sufficiently similar to the involuntary manslaughter charge submitted to the jury as to render harmless the omission of willful injury as an included offense.

## II. Ineffectiveness of Counsel in Failing to Object to Hearsay Testimony of Investigating Officer.

Defendant next contends that his conviction should be reversed because of trial counsel's ineffectiveness in failing to object to hearsay testimony by a police officer. Defendant, in his written argument, only states that this officer's testimony was a "detailed preview of the accounts of some witnesses who would testify at trial, and some who would not." Defendant's argument does not specify the testimony to which this reference relates. He only suggests that this was hearsay testimony corroborating the trial testimony of Patrick Hall.

Much of the officer's hearsay testimony pertained to events earlier in the day at Tina Roller's residence that cast little illumination on Gilley's slaying. Other hearsay evidence included matters told to the investigating officer by Hall, which were consistent with the latter's trial testimony. Defendant urges that under our cases all hearsay testimony is presumed to be prejudicial. The cases stating that proposition, however, involved alleged evidentiary error preserved by contemporaneous objection. The standard for reversible error is much different in cases involving alleged ineffective assistance of counsel.

In evaluating an ineffective-assistance-of-counsel claim, we look to see whether, under all the circumstances, the performance of counsel fell below normal range. *State v. Aldape*, 307 N.W.2d 32, 41–42 (Iowa 1981); *State v. Sunclades*, 305 N.W.2d 491, 495 (Iowa 1981). We have recognized with respect to objections to jury instructions that counsel need not take advantage of every opportunity to object in order to satisfy the standard of normal competency. *State v. Blackford*, 335 N.W.2d 173, 178 (Iowa 1983). A similar standard prevails, we believe, concerning evidentiary objections. Our review of the hearsay testimony not objected to by defendant's counsel convinces us that this evidence was not likely to be outcome determinative. Consequently, we are unable to find a lack of normal competency from counsel's omission.

## III. Sufficiency of Evidence to Support Conviction of Attempted Murder.

Defendant asserts that the evidence was insufficient to support his conviction for the attempted murder of witness Patrick Hall. He argues that to constitute "an attempt" for purposes of proving attempted murder the act must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation. He urges that his acts and those of Myre were mere preparation for the "doing in" of Hall. We believe that viewed in the light most favorable to the State the evidence was sufficient to show acts that amounted to the commencement of the consummation. *See Fryer v. State*, 325 N.W.2d 400, 406 (Iowa 1982) (*slight* acts in furtherance of the crime that render voluntary termination improbable are sufficient).

## IV. Sufficiency of Explanation of Sentence Imposed.

Finally, we consider defendant's contention that in pronouncing sentence the district court failed to state sufficient reasons for imposing consecutive sentences as required by Iowa Rule of Criminal Procedure 22(3)(d). In imposing consecutive sentences, the judge stated:

[The jury's verdict] leaves little problem for me to make a determination of what needs to be done in these particular instances. The facts were voluminous enough to support the conviction in both instances, in my opinion. So without further commentary about your background or your role that you played in this killing, it is the judgment and sentence of the court on count I where the jury found you guilty of murder in the first degree, that you be sentenced to the penitentiary for the rest of your natural life.

[O]n count II where you were convicted of an attempt to commit murder of the second victim, you will be sentenced to not more than twenty-five years in the penitentiary.... [T]hese sentences will be consecutive.

Without question, this statement of reasons for imposing consecutive sentences was extremely terse. Such brevity of statement, however, does not necessarily handicap our review of the sentencing discretion. *See, e.g., State v. Victor,* 310 N.W.2d 201, 205 (Iowa 1981). It is reasonably clear from what was said that the judge imposed consecutive sentences based on his perception of the aggregate culpability of two separate and distinct heinous offenses.

We have considered all issues presented and conclude that the judgment of conviction and the sentences imposed should be affirmed.

**DECISION OF THE COURT OF APPEALS AND JUDGMENT OF THE DISTRICT COURT AFFIRMED.**