# IN THE COURT OF APPEALS OF IOWA

No. 19-0573
Filed May 13, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**LARRY LAVELL WIGGINS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Mark R. Lawson,

Judge.


        A defendant appeals his convictions and sentence for possessing controlled

substances with intent to deliver and failure to affix a tax stamp.  **CONVICTIONS**

**AFFIRMED, SENTENCES AFFIRMED IN PART AND VACATED IN PART, AND**

**CASE REMANDED FOR RESENTENCING.**


        Martha J. Lucey, State Appellate Defender, and Melinda J. Nye and

Stephan J. Japuntich, Assistant Appellate Defenders, for appellant.

        Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney

General, for appellee.


        Considered by Tabor, P.J., and Mullins and Schumacher, JJ.

**TABOR, Presiding Judge.**

A jury found Larry Wiggins guilty of four drug-related charges. He appeals those convictions, alleging the State did not present substantial evidence to support the verdicts. Viewing the evidence in the light most favorable to the State, we affirm the verdicts. Wiggins also contends his trial attorney was ineffective for not objecting to testimony from the State's expert witness. Reviewing those claims de novo, we find Wiggins did not show counsel's performance was subpar or resulted in prejudice. Finally, Wiggins challenges aspects of the sentencing order. Because the restitution determination did not comply with *State v. Albright*, 925 N.W.2d 144 (Iowa 2019), we vacate the sentencing order in part and remand for the district court to calculate Wiggins's reasonable ability to pay court-appointed attorney fees and court costs.

## I. Facts and Prior Proceedings

The "call for service" on a gold Nissan Altima came through the Davenport police radio in the dead of the night. Patrol Officer Joel Griffin turned on both his emergency lights and siren before heading in the direction of the call. About a minute later, Officer Griffin saw the Altima make a left turn at the corner of Welcome Way and Kimberly Avenue. The chase began.

Siren blasting, Officer Griffin caught up with the Altima. The Altima's driver signaled and pulled over, perhaps believing the patrol car would drive by. But instead, Officer Griffin pulled behind the Altima to conduct a traffic stop. Officer Griffin later testified he had about fifteen seconds to notice "at least two occupants" in the front seat before the Altima sped away. The Altima's driver ran red lights

and sped by other cars.  Soon Officer Robert Farra joined the pursuit, positioning himself directly behind the Altima.

The chase ended when the Altima stopped in an alley between Brown and Warren Streets.  While the car was still moving, two occupants—one female and one male—jumped out and darted in opposite directions.  The woman emerged from the driver's door and the man from the front passenger's seat.  The Altima kept rolling until it hit a tree in the wooded area at the end of that alley.  The video recording from Officer Farra's dash camera showed him running after the passenger.  After a short foot-chase, Officer Farra apprehended the runaway passenger, Larry Wiggins.

Police searched the Altima and the surrounding area.  Officer Farra found a bag of marijuana, a "Hello Kitty" key chain, and a lighter on the ground where Wiggins had jumped from the car.  Police also retraced Wiggins's path during the foot-chase and found a plastic baggie containing 0.14 grams of cocaine base.  Under the Altima's front passenger seat, officers found another plastic baggie containing four to five pills.[1]  Under that same seat, they also found a green leafy substance and a second bag of marijuana laying on top of a digital scale.  Police found a third bag of marijuana resting on the front passenger seat.  Last, on the floor of the front passenger side, police found a fourth baggie of marijuana.  The four baggies of marijuana weighed—7.9 grams; 27.7 grams; 27.8 grams; and 7.6 grams—respectively.

---

[1]  The police initially thought the five pills were MDMA (ecstasy), but the lab later identified them as methamphetamine.

Plus, police found a loose green leafy substance, which also appeared to be marijuana, in the cup holder of the Altima's center console. Also from that center console, police recovered two documents: one bearing Wiggins's name and the other bearing the name of Darrell Allen Williams.[2] Lastly, the officers found an identification card belonging to D'Asia Ruplinger, the likely driver of the Altima.

The State filed a trial information charging Wiggins with possession with intent to deliver MDMA (Count I), possession with intent to deliver marijuana (Count II), failure to affix a drug tax stamp (Count III), and possession of crack cocaine (Count IV). Before trial, the State amended Count I to charge possession with intent to deliver methamphetamine.

At trial, the State offered expert testimony from Davenport Police Lieutenant Kevin Smull. In discussing the State's proof of intent to deliver, Smull pointed out "there's no paraphernalia . . . there's nothing there to show that it was for user amount from an ingestion point." In addition, Smull testified:

> The marijuana, you know, it's over 42.5 grams, so it qualifies for the drug stamp. And the way it's presented in its packaging, you have two ounce quantities and you have two quarter-ounce quantities. That would be for more distribution than it would be for personal use. It makes no sense to me to have marijuana in four separate packages for personal use. You would buy it in one package.

After hearing the evidence, the jury found Wiggins guilty on all four counts. The district court sentenced him to concurrent terms of imprisonment not to exceed ten years. The court suspended the fines. In addition, the court ordered Wiggins to pay a law enforcement initiative (LEI) surcharge of $125 on each count. *See* Iowa Code § 911.3 (2018). The court also ordered the ten-dollar drug abuse

---

[2] Williams was D'Asia Ruplinger's brother.

resistance education (DARE) surcharge on the three drug-possession counts. *See* Iowa Code § 911.2. The court ordered Wiggins to repay court-appointed attorney fees in an amount not to exceed $3300. But the court found he was not reasonably able to pay jail fees.

## II. Scope and Standards of Review

On the sufficiency claims, we review for correction of errors at law. *State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017). We will uphold the jury verdicts if substantial evidence supports them. *Id*. We consider evidence to be substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). Inherent in this standard of review is the recognition that the jurors may reject or credit evidence as they see fit. *Id*.

We also review restitution orders for correction of errors at law. *Albright*, 925 N.W.2d at 158. "[W]e determine whether the court's findings lack substantial evidentiary support, or whether the court has not properly applied the law." *Id*. (quoting *State v. Bonstetter*, 637 N.W.2d 161, 165 (Iowa 2001)).

For Wiggins's claim of ineffective assistance, we apply a de novo review. *State v. Query*, 594 N.W.2d 438, 444 (Iowa Ct. App. 1999). We also review his equal protection challenge de novo. *See State v. Wade,* 757 N.W.2d 618, 622 (Iowa 2008) (noting "statutes are cloaked with a presumption of constitutionality" and "challenger bears a heavy burden" to prove unconstitutionality).

### III.     Analysis

### A.     Sufficiency of the evidence.

Wiggins challenges two aspects of the State's case against him.  First, he argues the State failed to prove he had constructive possession of the controlled substances.[3]  Second, he argues if the State did prove he possessed the marijuana, it did not offer sufficient evidence that he failed to affix a label on the marijuana packaging to show payment of state taxes on that substance.  We will address each challenge in turn.

### 1.     Constructive possession

Let's start with constructive possession.  To prove constructive possession, the State had the burden to show Wiggins knew the controlled substances were present in and around the Altima *and* had the authority or right to exercise control over them.  *See State v. Kern*, 831 N.W.2d 149, 161 (Iowa 2013).  The State may prove constructive possession by inferences.  *See State v. Reed*, 875 N.W.2d 693, 705 (Iowa 2016).

Because Wiggins was not the only person in the place where the officers found the drugs, we consider several factors when deciding if he had constructive possession of them.  These factors include: (1) any incriminating statements by Wiggins; (2) any incriminating actions upon police discovery of the drugs among his belongings; (3) any fingerprints on the packaging; and (4) any other

---

[3] The State can prove possession as either actual or constructive.  *State v. Kemp*, 688 N.W.2d 785, 789 (Iowa 2004).  A defendant has actual possession if an item is on their person.  *Id.*  A defendant has constructive possession if they knew about the item's presence and have authority or right to maintain control over it.  *Id.* Because police found no drugs on Wiggins's person, this matter concerns constructive possession.  *See id.*

circumstances linking him to the drugs. *See State v. Webb*, 648 N.W.2d 72, 79 (Iowa 2002). Further, because police found drugs in a vehicle, we may consider these additional questions: (1) were the drugs in plain view; (2) were they with Wiggins's personal effects; (3) were they on his side of the car or next to him; (4) did he own the vehicle; and (5) did he act suspiciously. *See State v. Dewitt*, 811 N.W.2d 460, 475 (Iowa 2012).

Wiggins argues his "mere proximity" to the controlled substances recovered at the scene "is not enough" to sustain his convictions. He emphasizes he did not own the Altima where police found most of the drugs. And the documents found in the console shows he did not have exclusive control of the car.

Granted, Wiggins and the driver had joint access to the interior of the Altima. *See id.* at 474–75 (discussing modern role of vehicles as shared accommodations). Wiggins also made no incriminating statements to police. Nor did police ask lab technicians to do fingerprinting on the baggies found.

But other circumstances did link Wiggins to the drugs. For example, the State produced strong evidence that Wiggins acted suspiciously. Wiggins bailed out of the car even before it stopped. He then ran from police. An officer had to chase him on foot before taking him into custody. After the chase, police found incriminating items, including a baggie of crack cocaine, strewn on the path of his retreat. *See State v. Thomas*, 847 N.W.2d 438, 444 (Iowa 2014) (finding constructive possession when defendant's actions were "explainable most logically as an effort to get the drugs off his person"). Back at the Altima, police found marijuana in plain view. *See State v. McMullen*, 940 N.W.2d 456, 462 (Iowa Ct. App. 2019) (noting constructive possession could be supported by presence of

marijuana in car's center console).  Officers also found methamphetamine and a digital scale under the passenger seat where Wiggins had been sitting.

We are satisfied this evidence was sufficient for the jury to reasonably infer that Wiggins knew the drugs were present and exercised control and dominion over them.  *See Kemp*, 688 N.W.2d at 790.

### 2.  Proof of Tax Stamp Violation

Wiggins next contends the State did not prove he violated the tax stamp provision at Iowa Code section 453B.12.  To convict Wiggins of that offense, the jury had to find the State offered proof beyond a reasonable of three elements: (1) he knowingly possessed marijuana; (2) which weighed forty-two and one-half grams or more; and (3) "did not have permanently affixed to it a stamp, label, or other official indication of payment of the state tax imposed on the substance."  *See State v. White*, 545 N.W.2d 552, 555 (Iowa 1996) (listing elements of offense).

Wiggins contests the State's proof of the third element.  He contends testimony from Lieutenant Smull that he saw no tax stamps when he reviewed photographs of the seized drugs fell short of proof beyond a reasonable doubt. Wiggins underscores that Smull did not play a role in the original investigation of the case.

The State counters that the photographs of the marijuana packages offered into evidence were sufficient to prove the tax stamp violation.  Plus, in the State's view, the jury could rely on Smull's observations.  In addition, at trial, the prosecutor resisted the motion for judgment of acquittal, arguing:

> The bags are in evidence; they don't have a stamp.  That's clear.
> The jury can see that.  It doesn't need to be said out loud,
> necessarily, but it was said out loud.  He did say he reviewed the

evidence in this case. Lieutenant Smull did testify that he was familiar with what the tax stamp looked like and that it was not present; therefore, there was none affixed.

We find substantial evidence to support Wiggins's tax stamp conviction. The jury could assign the appropriate weight to Smull's testimony, which was corroborated by photographic exhibits and the baggies of marijuana collected by the officers and admitted into evidence at trial. *See State v. Rivera*, 614 N.W.2d 581, 584 (Iowa Ct. App. 2000) (finding testimony about weight of methamphetamine mixture was corroborated by photograph of jar which clearly portrayed amount of liquid it contained).

Because the State offered substantial evidence to support Wiggins's convictions, we decline to disturb the jury's verdicts.

**B.     Ineffective Assistance of Counsel**

Wiggins next argues he did not receive effective assistance of counsel.[4] He contends his trial attorney breached a material duty by failing to object when Lieutenant Smull gave expert testimony for the State. More specifically, Wiggins argues counsel should have objected when Lieutenant Smull testified "there was no reason to even investigate" Williams—the driver's brother—because police found the drugs where Wiggins had been sitting in the Altima. In Wiggins's estimation, the expert impermissibly commented on his guilt by suggesting the

---

[4] The Iowa Code no longer permits appellate courts to decide claims of ineffective assistance on direct appeal. *See* 2019 Iowa Acts ch. 140, § 31 (codified at Iowa Code § 814.7 (2020)). But that provision does not apply to a judgment entered before July 1, 2019. *See State v. Macke*, 933 N.W.2d 226, 228 (Iowa 2019). Because the judgment here was entered in March 2019, we are not foreclosed from considering Wiggins's claim of ineffective assistance. *See State v. Kuhse*, 937 N.W.2d 622, 627 (Iowa 2020).

police did not need to pursue an alternative suspect. *See State v. Myers*, 382 N.W.2d 91, 97 (Iowa 1986) ("A witness is not permitted to express an opinion as to the ultimate fact of the accused's guilt or innocence.").

In a similar vein, Wiggins insists his attorney should have objected to Smull's testimony about the packaging of the drugs: "The marijuana is, I have no doubt in my mind, based on my training and experience and what I've seen over the years was for distribution, just the way the presentation of it, in each individual bag." The prosecutor highlighted that expert testimony in closing arguments.

In a second ineffective-assistance claim, Wiggins alleges his attorney was remiss in not objecting to a lack of foundation for Smull's tax-stamp testimony.

To support his claims of ineffective assistance, Wiggins must show (1) counsel failed to perform an essential duty and (2) prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). To satisfy the breach-of-duty prong, Wiggins "must show that counsel's performance was deficient," meaning the errors were so serious that the attorney stopped functioning as the "counsel" guaranteed by the Sixth Amendment. *See id.* at 687. On the prejudice prong, Wiggins must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "Failure to prove either prong is fatal to an ineffective-assistance-of-counsel claim." *State v. Lorenzo Baltazar*, 935 N.W.2d 862, 868 (Iowa 2019).

### 1.    Admissibility of Expert Opinion

To start, we address Wiggins's complaint about inadmissible opinion testimony.  When thinking about counsel's duty, we are mindful that Iowa courts are committed to a liberal view on the admissibility of expert testimony.  *See* Iowa R. Evid. 5.702; *State v. Tyler*, 867 N.W.2d 136, 153 (Iowa 2015).  We will not interfere with the district court's exercise of discretion in admitting an expert opinion unless we see manifest abuse.  *See State v. Ogg*, 243 N.W.2d 620, 621 (Iowa 1976).  But we do not allow a witness to express "an outright opinion" on the defendant's guilt.  *Id.*

In the first passage Wiggins highlights from Lieutenant Smull's testimony, the expert suggested police didn't need to investigate another suspect because they found the drugs in the passenger seat that Wiggins had occupied.  We agree that opinion crossed the "fine" but distinct line between permissible and impermissible expert testimony.  *See State v. Vesey*, 482 N.W.2d 165, 167 (Iowa Ct. App. 1991).  The prosecutor asked Smull about carrying drugs for personal use without "having any devices to use those drugs in the car."  Smull's response went beyond a general discussion of the indicia of personal use versus drug dealing.  By saying police needed to look no further than Wiggins, Smull commented on his guilt.  Defense counsel could have lodged a successful objection to that remark.

But "counsel need not take advantage of every opportunity to object in order to satisfy the standard of normal competency."  *State v. Carberry*, 501 N.W.2d 473, 477 (Iowa 1993).  Instead of objecting, Wiggins's counsel made a strategic decision to cross examine Smull on the ambiguity in determining who is in possession of the drugs when there's more than one person in a vehicle.

"Imprudent trial strategy, miscalculated tactics or mistakes in judgment do not necessarily amount to ineffective counsel." *Vesey*, 482 N.W.2d at 168. Wiggins has not shown he was prejudiced by counsel's strategy. *See id.* Even if counsel had objected, given the State's strong evidence of constructive possession, no reasonable probability existed that Wiggins would have been acquitted without that expert opinion.

The second passage from Smull's testimony—discussing how the difference in drug packaging distinguishes between users and dealers—was not objectionable. An expert witness may testify to "the customs and practices of those who use or deal in narcotics." *Id.* at 167. That expert may also address whether the actions of the accused fit with the "well-defined modus operandi" of the offense. *Id.* Lieutenant Smull did not testify that Wiggins possessed the requisite intent to deliver those drugs. He merely expressed his opinion that the manner of packaging was consistent with how drugs are parceled by dealers. Counsel had no duty to make a meritless objection. *See State v. Shumpert*, 554 N.W.2d 250, 254 (Iowa 1996).

### 2. Foundation for Tax-Stamp Testimony

We next turn to Wiggins's claim that counsel was ineffective in failing to object to Lieutenant Smull's assertion that the narcotics were bereft of tax stamps. According to Wiggins, Smull lacked adequate personal knowledge to testify to the absence of the tax stamps as he was not part of the investigation.

Wiggins claims counsel should have objected under Iowa Rule of Evidence 5.901(a) (requiring proponents of evidence to authenticate that the item offered is what they claim it is). Yet he admits the question raised is "slightly different"

because he is concerned with Smull's observations of what was missing, not what was present.

The State contends counsel had no duty to object on foundation grounds. We agree. Lieutenant Smull testified that he reviewed the supplemental police reports, the physical evidence, the photographic evidence, and the lab reports. From that review, he discerned that the marijuana packages had no stamp attached to show state taxes had been paid. His testimony was admissible without additional foundation. Further, Wiggins fails to show he was prejudiced by Smull's testimony about the absence of tax stamps. The jury was able to see firsthand from the drugs admitted as evidence and from the crime scene photographs that Wiggins had not affixed tax stamps.

Wiggins did not prove he received ineffective assistance in regard to any part of Lieutenant Smull's testimony.

### C. Sentencing Issues

In the last issue of his brief, Wiggins argues the sentencing court mistakenly ordered him to pay court costs, attorney fees, the DARE surcharge, and the LEI surcharge. He challenges the restitution order under the reasonable-ability-to-pay analysis in *Albright*, 925 N.W.2d at 158. He also contends the LEI surcharge violates his equal protection rights. We will address those two claims in turn.

### 1. Restitution

In the sentencing process, the district court must order restitution "to the clerk of court for fines, penalties, [and] surcharges" without regard to an offender's reasonable ability to pay. Iowa Code § 910.2(1) (2018); *Albright*, 925 N.W.2d at 161. As to court costs and court-appointed attorney fees, the court can only award

restitution "to the extent the offender has the reasonable ability to pay."[5]  *Albright*, 925 N.W.2d at 159.

Here, the court decided Wiggins did not have the reasonable ability to pay jail fees but did have the reasonable ability to pay up to $3300 in attorney fees, as well as court costs.  Because the district court did not have the total calculation of the restitution available when making its reasonable-ability-to-pay determination, we vacate that part of the sentence and remand for resentencing consistent with *Albright*.  *See State v. Covel*, 925 N.W.2d 183, 189 (Iowa 2019).  The State agrees with this course of action.

### 2.    LEI Surcharge

Last, Wiggins argues the imposition of the LEI surcharge violated his equal protection rights as guaranteed by both state and federal constitutions.  *See* U.S. Const. amend. XIV; Iowa Const. art. I, § 6; *Nguyen v. State*, 878 N.W.2d 744, 757 (Iowa 2016).  "[T]he equal protection guarantee requires that laws treat all those who are similarly situated *with respect to the purposes of the law* alike."  *Varnum v. Brien*, 763 N.W.2d 862, 883 (Iowa 2009); *accord Nguyen*, 878 N.W.2d at 757.

Iowa Code section 911.3 mandates the imposition of a $125 surcharge following judgment of conviction for certain offenses.[6]  Wiggins asserts "he is

---

[5] Wiggins argues the DARE surcharge should be subject to the reasonable-ability-to-pay determination because it is a "contribution to a local anticrime organization" under 910.1(2).  We disagree.  *See State v. Tillman*, No. 18-1956, 2020 WL 376551, at *4 (Iowa App. Jan. 23, 2020) (holding LEI and DARE surcharges were not subject to a determination of the offender's reasonable ability to pay); *State v. Thompson*, No. 19-0230, 2020 WL 110397, at *1 (Iowa App. Jan. 9, 2020) (rejecting argument that DARE surcharge was equivalent to contribution to local anticrime organization).

[6] They include controlled-substance offenses under chapter 124; pharmacy-related offenses under chapter 155A; excise-tax violations under chapter 453B;

similarly situated with other criminal defendants who are treated differently by virtue of the fact that they are not assessed the LEI surcharge." From there, he submits there is no rational basis for imposing the LEI surcharge on some defendants while exempting others. We disagree.

Wiggins cannot show he is similarly situated with offenders who have violated statutes not listed in section 911.3(1). Crimes fall into different categories based on their respective elements. "[T]he legislature is free to impose disparate punishments for different crimes so long as the offenses are distinguishable on their elements." *State v. Ceaser*, 585 N.W.2d 192, 196 (Iowa 1998), *overruled on other grounds by State v. Bruegger*, 773 N.W.2d 862, 870–72 (Iowa 2009). "In other words, if the elements of the offenses are not the same, persons committing the crimes are not similarly situated and, therefore, may be treated differently" without violating the equal protection clause. *Id.* We find no merit in Wiggins's challenge to the constitutionality of section 911.3(1). *See Thompson*, 2020 WL 110397, at *2.

**CONVICTIONS AFFIRMED, SENTENCES AFFIRMED IN PART AND VACATED IN PART, AND CASE REMANDED FOR RESENTENCING.**

---

burglary offenses under chapter 713; theft, fraud, and related offenses under chapter 714; forgery and related crimes under chapter 715A; damage and trespass to property under chapter 716; possessing contraband under section 719.7; furnishing a controlled substance or intoxicating beverage to an inmate under section 719.8; and prostitution, pimping, and pandering, in violation of sections 725.1 through 725.3.